# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR RODRIGUEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>M.J. BROTHERS, INC., et al.,<br><br>Defendants. | Case No. 1:18-cv-00252-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(ECF No. 18)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## PROCEDURAL HISTORY

On February 16, 2018, Victor Rodriguez, Estreberto Valdez, Miguel Esparza and Francisco Banda ("Plaintiffs") filed this action on behalf of themselves and all others similarly situated against M.J. Brothers, Inc.; Eduardo Martin; Daniel Martin; Fernando Martin; and Ronald Martin (collectively "Defendants") alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and California labor law. On April 27, 2018, Defendants filed an answer to the complaint. On May 8, 2018, the parties filed a stipulation regarding the production of certain discovery and staying this action so they could participate in mediation. On May 11, 2018, Defendants filed an amended answer.

A scheduling order issued on October 2, 2018. On December 4, 2018, the parties filed a notice of settlement of the class and collective actions. On February 4, 2019, a motion for

preliminary approval of the class action settlement and a stipulation to file a first amended complaint was filed. The first amended complaint was filed on February 5, 2019.

The Court heard oral argument on March 6, 2019. Counsel Enrique Martinez appeared for Plaintiffs. Counsel Patrick Moody appeared telephonically for Defendants. Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the March 6, 2019 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

## II.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

Defendant M.J. Brothers, Inc. is a California company doing business in Tulare, California. (First Amended Complaint ("FAC") ¶ 11, ECF No. 22.) Defendant M.J. Brothers is co-owned and managed by Defendants Eduardo Martin, Daniel Martin, Fernando Martin, and Ronald Martin (hereafter "the Martins"). (FAC ¶¶ 12-15.) Defendant M.J. Brothers provides machinery and personnel to client dairies at their premises to harvest, transport, and weigh wheat and corn that is used as animal feed. (FAC ¶ 17.) The Martins oversee the company's operations and make decisions regarding scheduling, working conditions, and hiring and terminating employees. They visit and oversee operations at the numerous customer worksites and handle administration of many of the company's affairs. (FAC ¶ 18.)

Four groups of workers are employed by Defendants: 1) shop workers who service trucks and service and clean agricultural equipment at Defendant's shop ("shop workers"); 2) farm equipment operators who work at harvesting ("operators") and pruners; 3) truck drivers who transport wheat and corn from the field to the dairy ("truck drivers"); and 4) weighers who weigh the wheat and corn for purposes of billing clients ("weighers"). (FAC ¶ 19.)

The shop workers are paid at an overtime rate only after having worked more than 10 hours per day or 60 hours per week. They are not provided with a second meal period after working more than ten hours per day and until recently were not provided with rest periods. (FAC ¶ 20.)

The operators handle farm machinery to harvest corn or wheat at the client's fields.

Pruners worked briefly as agricultural workers pruning cherries and pistachios. Operators worked more than twelve hours per day and were not provided with meal and rest periods until recently. Pruners worked more than 8 hours per day and were not provided with all their meal and rest periods. (FAC ¶ 21.)

Truck drivers transport the wheat and corn from the client's fields to their dairies. Truck drivers are paid at an overtime rate after having worked more than 10 hours per day or 60 hours per week. Until recently truck drivers were not provided with meal and rest periods. They typically worked more than 10 hours per day and had to eat in their vehicles. Truck drivers were required to report to work on days for which they were not selected to work or worked less than 4 hours and were not compensated for all their reporting time. (FAC ¶ 22.)

Weighers work at the client's premises weighing and recording the wheat and corn brought by truck drivers. The weighers are paid at an overtime rate after having worked more than 10 hours per day or 60 hours per week. They typically work more than 12 hours per day and until recently were not provided with meal and rest periods. Weighers must report to work on days for which they were not selected to work or worked less than four hours and were not compensated for all their reporting time. (FAC ¶ 23.)

Plaintiff Rodriguez was employed as truck driver from May 2008 to May 2016. (FAC ¶ 7.) Plaintiff Valdez was employed as a truck driver from 2010 to May 2016. (FAC ¶ 8.) Plaintiff Esparza was employed as an operator and shop worker from 2008 to December 2016. (FAC ¶ 9.) Plaintiff Banda was employed as a truck driver and shop worker for over 15 years until May 2017. (FAC ¶ 10.)

Plaintiffs bring this action alleging failure to pay overtime in violation of the FLSA; failure to pay meal and rest periods in violation of California Labor Code section 226.7; failure to provide itemized wage statements in violation of California Labor Code section 226(A); failure to pay for reporting time in violation of Industrial Wage Orders 4, 9, and 14; failure to pay waiting time penalties in violation of California Labor Code section 201, 202, and 203; unfair business practices in violation of California Business and Professions Code section 17200 et seq. and are seeking civil penalties under the California Private Attorney's General Act

("PAGA"), Cal. Lab. Code § 2698 et seq.

## III.

## LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, especially where settlement occurs prior to class certification, courts must peruse the proposed settlement to ensure the propriety of class certification and the fairness of the settlement. Staton v Boeing, 327 F.3d 938, 952 (9th Cir. 2003).

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013). In reviewing a proposed settlement, the court represents those class members who were not parties to the settlement negotiations and agreement. In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 448 (C.D. Cal. 2014).

## IV.

## TERMS OF SETTLEMENT AGREEMENT

The settlement agreement provides for a settlement fund of five-hundred twenty-five thousand dollars ($525,000.00) to resolve all claims of the settlement class for the alleged failure to provide meal and rest breaks and pay wages, penalties, and attorney fees and costs. (Stipulation and Agreement to Settle Class and Collective Action p. 14, ¶ 34, ECF No. 18-2.)

Defendants shall pay the employer's share of the payroll taxes separately. (Id. at ¶ 34.) Prior to payment of settlement awards, the common fund shall be reduced by service awards to the named Plaintiffs, award of attorney fees and costs to class counsel, all costs of settlement administration, and a PAGA payment to the California Labor and Workforce Development Agency ("LWDA"). (Id. at ¶ 35.) The remaining funds constitute the net settlement fund. (Id.) The class period is defined as "any time between February 16, 2014 and May 27, 2018." (Id. at ¶ 6.)

The settlement fund will be funded by six separate installments with the first payment of $87,500.00 to be made within 180 days from the date of final approval of the settlement. (Id. at ¶ 36.) The following payments shall be made six months after the previous payment. (Id.) In the event that a payment is not made the entire amount shall be immediately due and payable. (Id.) Notice of default shall be given by mail and fax and no other action shall occur until after 10 days have lapsed during which time Defendants have the right to cure any default. (Id.)

The settlement fund shall be distributed in three installments. (Id. at ¶ 37.) The first installment shall be distributed within thirty days of receipt of the first payment from Defendants. (Id.) This installment shall be distributed to pay the named Plaintiff's incentive awards, costs of claims administration, the PAGA payment to the LWDA, and the attorney's costs in the action. (Id.) The second distribution is to be made within thirty days after the claims administrator receives the third payment from Defendants. (Id.) This payment shall be used to begin paying settlement awards to the class. (Id.) The third distribution shall be made within thirty days after the sixth installment payment is received. (Id.) This distribution shall pay the remaining settlement awards to the class in proportionate shares and class counsel's attorney fees. (Id.) Any undistributed funds from checks that are not cashed will escheat to the California Division of Labor Standards Enforcement of Unpaid Wages Fund to be held in the name of and for the benefit of the class member. (Id.)

The claims administrator shall pay from the common fund attorney fees in the amount of one-hundred thirty-one thousand two-hundred fifty dollars ($131,250.00); costs of twelve thousand five hundred dollars ($12,500.00), and five thousand dollars ($5,000.00) to each of the

named Plaintiffs. (Id. at ¶¶ 38.1, 38.2.) The net settlement fund is to be allocated in the following manner: twenty percent (20 %) to unpaid wage claims; eighty percent (80 %) to statutory penalties and interest; and ten thousand dollars ($10,000.00) to PAGA penalties. (Id. at ¶ 39.1.) The settlement administrator shall pay the LWDA $7,500.00 in PAGA penalties. (Id. at ¶ 39.2.)

The net settlement fund shall be distributed to the members of the settlement class and FLSA class. (Id. at ¶ 39.3.) The funds shall be distributed based upon the number of payroll periods that the class member worked. (Id.) Each class member shall be paid the amount after applicable state and federal taxes are withheld. (Id. at ¶ 40.) The settlement administrator shall issue a W-2 for the payment of unpaid wages and a Form 1099 for the portion that is allocated to statutory penalties and interest. (Id. at ¶ 40.)

Defendants agree not to oppose the application for attorney fees or costs by class counsel. (Id. at ¶ 43.)

The class members agree to release

> any and all claims, debts liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney fees, damages, action or causes of action, whether known or unknown, during the Relevant Time Period, as defined below, and that were alleged in the Complaint filed on February 16, 2018, on behalf of the Named Plaintiffs and the Settlement Class Members, based on the facts stated in the Complaint, including, but not limited to allegations, that:
> (1) Defendants failed to compensate all straight time worked by Settlement Class Members; (2) Defendants failed to pay overtime compensation under the Fair Labor Standards Act (FLSA); (3) Defendants failed to provide meal periods, or compensation in lieu thereof, in violation of California Labor Code sections 226.7 and 512 and the applicable Industrial Welfare Commission Wage Order; (4) Defendants failed to authorize and permit rest periods, or compensation in lieu thereof, in violation of California Labor Code section 226.7 and the applicable Industrial Welfare Commission Wage Order; (5) Defendants failed to compensate for reporting time, in violation of the applicable Industrial Welfare Commission Wage Order; (6) Defendants failed to provide itemized employee wage statements, in violation of California Labor Code sections 226, 1174, and 1175 and the applicable Industrial Welfare Commission Wage Order; (7) Defendants failed to timely pay wages due at termination, in violation of California Labor Code sections 201-203 and 205; (8) Defendants engaged in unlawful business practices in violation of California Business and Professions Code section 17200, et seq; (9) Settlement Class Members are entitled to PAGA penalties pursuant to California Labor Code Sections 2698, et seq.; (10) Settlement Class Members are entitled to declaratory relief to determine whether the practices alleged in the Complaint are unlawful; (11) Settlement Class Members are entitled to injunctive relief to halt any practices alleged in the Complaint that are unlawful; (12) Settlement Class

6

> Members are entitled to restitutionary damages under California Business & Professions Code sections 17200, et seq.; (13) Defendants are liable for attorneys' fees and/or costs incurred to prosecute this action on behalf of Settlement Class Members, including fees incurred for the services of Class Counsel; and (14) Defendants are liable for any other remedies, penalties, and interest under California Labor Code sections 201, 202, 203, 205, 226, 226.7, 510, 512, 1174, 1194, 1194.2, 1197, 1197.1, 2699, and the applicable Industrial Welfare Commission Wage Order. If a person opt-outs of the Class after receiving the Class Notice, his or her California claims will not be released and will not barred by res judicata in any future legal proceedings. If a person does not submit a consent to join/opt-in to the FLSA action, that person's FLSA claim will not be released, regardless of whether he or she is part of the Class Settlement.

(Id. at ¶¶ 17, 31.) The named Plaintiffs agree to release any and all claims they may have against the defendants based on any events occurring up to the effective date of the settlement agreement, whether known or unknown, except for claims that may not be released as a matter of law. (Id. at ¶ 32.)

Workers who consent to join or opt into the FLSA class action will be releasing their FLSA claims. (Id. at ¶ 39.4.)

The claims administrator shall mail by U.S. mail the class notice and FLSA notice and dispute forms in English and Spanish. (Id. at ¶ 49.3(a)(b).) The notices shall be mailed to the most current mailing address available. (Id. at ¶ 49.3(b).) For any notices that are returned as undeliverable, the class administrator shall use appropriate search methods to attempt to obtain a new address and re-mail the notice if a new address is obtained. (Id. at ¶ 49.3(b).) If the claims administrator is unable to obtain a new address within thirty days of the original mailing date or 45 days after a notice is returned as non-deliverable, the claims administrator shall be deemed to have satisfied its obligation to mail class notice. If a class member does not obtain notice through these procedures, the intended recipient shall nevertheless be deemed to be bound by the terms of the settlement agreement. (Id. at ¶ 49.3(b).) The claims administrator shall provide Plaintiff's counsel all opt-in forms for the FLSA class so they can be filed with the court. (Id.)

Any objections to the settlement must be submitted in writing. (Id. 49.3(c).) No member shall be entitled to object at the final hearing unless a written objection is submitted to class counsel stating the intent to appear. (Id.)

All members of the settlement class and those members who opt into the FLSA class action shall receive a settlement award. (Id. at 49.3(f).) The settlement administrator shall determine the amount of the award to each class or collective action member. (Id.)

## V.

## DISCUSSION

### A.  Certification of the Rule 23 Class

Even where the certification of the class is unopposed, the court must examine whether the settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure of numerosity, commonality, typicality, and adequacy of representation. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). The court is required to pay " 'undiluted, even heightened attention' to class certification requirements in a settlement context." Hanlon, 150 F.3d at 1019 (quoting Amchem Products, Inc. v. Windsor ("Amchem"), 521 U.S. 591, 620 (1997)). The dominant concern of Rule 23(a) and (b) is whether the proposed class has sufficient unity so that it is fair to bind absent class members to the decisions of the class representatives. Amchem, 521 U.S. at 621.

#### 1.  Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Records produced by Defendants show that there are 185 putative class members. (Decl. of Enrique Martinez ¶ 13, ECF No 18-2.) The number of individual class members in this instance exceeds the number that has been found to be so numerous that joinder of all members would be impracticable. See Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members"); Cervantez v. Celestica Corp., 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.") The class of 185 members satisfies the numerosity requirement.

#### 2.  Commonality

The commonality requirement is satisfied where "there are questions of law or fact that

are common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe Rule 23(a)(2)'s commonality requirement permissively. Cervantez, 253 F.R.D. at 570. The key inquiry is "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Arredondo v. Delano Farms Co., 301 F.R.D. 493, (E.D. Cal. Feb. 21, 2014) (citations omitted). Commonality is not required for all of the claims. It is sufficient if there is one single issue common to the proposed class. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010).

Plaintiffs argue that all class members "were treated identically under Defendants' uniform policies and practices with regard to overtime pay, meal and rest periods, and reporting time pay." (ECF No. 18-1 at 16.) Plaintiffs contend that all class members were subject to the same level of control by all the defendants and the questions common to the class include:

- Whether certain class members were entitled to overtime compensation under FLSA after working forty hours per week and, if so, whether they were paid in compliance with that requirement;
- Whether certain class members were entitled to overtime compensation under the California Labor Code and, if so, whether they were paid in compliance with those requirements;
- Whether Defendants' failed to provide class members with meal periods as required by law;
- Whether class members were provided with their rest breaks, as required by law;
- Whether class members are entitled to statutory premium pay for every day they missed a meal or rest break;
- Whether certain class members were unlawfully denied reimbursement for work-related expenses;[1]
- Whether Defendants provided class members with accurate itemized statements in accordance with state law; and,
- Whether Defendants failed to pay waiting time penalties to former employees for all of their wages due.

(ECF No. 18-1 at 17.) Plaintiffs argue that the answer to these questions will resolve the claims of all class members in one stroke.

Plaintiffs contend that Defendants had a company-wide policy of requiring employees to work more than 10 hours per day or 60 hours per week without paying them overtime or providing them with rest and meal breaks as required under California law. Further, Plaintiffs allege that truck drivers and weighers were required to report for work on days for which they

---

[1] The Court notes that there are no claims in this action that employees were not paid for work related expenses.

9

1 were not selected to work or worked less than four hours without receiving reporting time 2 compensation. Plaintiffs have sufficiently shown that they suffered a common injury which is 3 capable of resolution on a class wide basis. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 4 (2011). The facts and legal issues are substantially identical for the class members. The Court 5 finds that class relief based upon commonality is appropriate in this instance.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This does not require the claims to be substantially identical, but that the representatives' claims be "reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020. Typicality is determined by looking to the nature of the claims of the class representatives and tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D.Cal.1985)).

Plaintiffs allege that they and the unnamed class members worked under the same terms and conditions of employment as the other members of the proposed class. (Decl. of Enrique Martinez ¶ 8.) In each job category, the proposed class members were treated identically under Defendants' uniform policies and practices with regard to overtime pay and meal and rest breaks. (Id.) The truck drivers and weighers were treated the same with regards to the failure to provide reporting time pay. (Id.)

Here, the named plaintiffs' claims are typical to the claims of the purported class members because they were all subjected to the same failure to pay overtime and receive meal and rest breaks. The Court does note that none of the named Plaintiffs worked as weighers or pruners. However, the weighers and pruners were subjected to the same failure to pay overtime and provide rest and meal periods as the rest of the class. Similarly, the weighers were subjected to the same failure to pay reporting time wages as the truck drivers.

The Court finds that Plaintiffs have satisfied the typicality requirement.

1    4.    Adequacy

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted). This inquiry is given heightened scrutiny in "cases in which class members may have claims of different strength." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that they share the same interests as the putative class members in seeking unpaid overtime compensation, penalties for missed meal and rest breaks, and other forms of relief that are identical due to Defendants' alleged misconduct. (ECF No. 18-1 at 18.) Further, Plaintiffs contend that their interests are representative of and consistent with the class and they have actively participated in this litigation which demonstrates they have and will continue to protect the interests of the proposed class. (Id. at 18-19.)

Aside from a general statement that there are no conflicts between the named and putative class members, counsel has not addressed any conflicts of interest between the named representatives and the putative class members. While the threshold to be named as lead plaintiff representing the class is fairly low: "[t]he fact that plaintiffs are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy[,]" Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 617 (N.D. Cal. 2014) (quoting Hodges v. Akeena Solar, Inc., 274 F.R.D. 259, 267 (N.D. Cal. 2011)), the Court does find some concerns regarding whether the named class members have created a conflict of interest based on the terms of the settlement agreement in this matter.

First, the settlement provides forty percent of the damages to which the class is entitled. (Decl. of Enrique Martinez ¶ 17.) The settlement is to be distributed to the class members based

11

upon their actual days and pay periods worked. The average class member is expected to receive approximately $1,804.00 with individual recovery ranging from $14,400.00 to $18.00. (Id.) Given the amount of time that the named class members are long term employees of Defendant, they would be receiving compensation at the middle if not upper range of the individual recovery. The named representatives are seeking an additional $5,000.00 in payment for their services to the class, and the Court notes that this action settled approximately one year after it was filed and was stayed for a large part of that time. While counsel argues that the named class members attended meetings and were instrumental in getting information to other class members, these are the same representations made in virtually every similar class action before this court.

Not only does this amount seem excessive in relation to the compensation that the class will be receiving and the expectation that these class members will be receiving an individual award far in excess of the majority of the unnamed class members, but the settlement in this instance is to be paid in six installments over a period of three years. (Id. ¶ 6.) The first installment is to pay the named Plaintiffs' incentive awards, costs of claim administration, PAGA penalties, and costs of the action. (Id.) The settlement class will not receive any funds until a year and a half until after the named Plaintiffs' incentive payment is paid with a final payment three years after the named Plaintiffs received their incentive award. (Id.)

The concern here is that the named class members will receive a substantial amount more than the majority of the class members as an incentive award and are to be paid the award at least a year and a half prior to the putative class members receiving any funds and three years prior to the full payment to the unnamed class members. That the named Plaintiffs will be receiving substantial compensation prior to any unnamed class member receiving any award raises the inference that the named class members have settled this action for their personal benefit. The Court finds that as currently structured, the class representatives have created a conflict of interest based upon the payment of the incentive award. The Court does find that this potential conflict could be addressed by delaying payment of the incentive awards to the named Plaintiffs until the final payment to the class. However, as the settlement is currently

structured, the Court finds adequacy is not met due to this conflict of interest and that the Rule 23 class should not be certified.

### B. Certification of the FLSA Class

Plaintiffs also request that this matter be certified as a collective action under the FLSA. The FLSA provides the right of an employee to represent similarly situated employees in a suit against their employer for the failure to pay minimum wage or overtime compensation. 29 U.S.C. § 216(b). Unlike a class action under Rule 23, to participate in the collective action an employee is required to give his consent in writing to become a party. 29 U.S.C. § 216(b); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate). "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action." Edwards v. City of Long Beach, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006).

Determining whether a collective action is appropriate is within the discretion of the district court. Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004). However, "[n]either the FLSA, nor the Ninth Circuit, has defined the term 'similarly situated' for purposes of certifying a collective action." Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324, 1340 (N.D. Cal. 2014). While it is unclear what standard should be used to determine if the employees are similarly situated under the FLSA, given that the employee consents to participating in the FLSA actions courts do find that "the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure." Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); accord Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 607 (E.D. Cal. 2015).

Federally courts generally use a two-step approach to determine whether to allow a collective action to proceed. Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 323 (N.D. Cal. 2013). Initially, the court determines whether the potential class members should receive notice of the

1 action, and plaintiffs can satisfy their burden to show that they are "similarly situated" by
2 making substantial allegations, supported by declarations or discovery, that "the putative class
3 members were together the victims of a single decision, policy, or plan." Nen Thio., 14
4 F.Supp.3d at 1340 (citations omitted). The determination is based on a fairly lenient standard,
5 and typically results in conditional certification. Id. The second certification decision is usually
6 made at the close of discovery when the defendant brings a motion to decertify the class and the
7 "courts apply a stricter standard for similarly situated employees and review several factors,
8 including whether individual plaintiffs'' claims involve disparate factual or employment
9 settings; the various defenses available to the defendant which appear to be individual to each
10 plaintiff; as well as fairness and procedural considerations." Id. at 1341.

11 As discussed above, the putative class members appear to be similarly situated because
12 their alleged injuries arise from Defendants' uniform policies and practices with regard to
13 overtime pay, meal and rest periods, and reimbursement of work-related expenses. Under the
14 FLSA's lenient standard the first step has been met. As Defendants will not seek decertification
15 of the class, the FLSA class is conditionally certified.

### C. Further Analysis

The Court identifies the following additional issues that the parties should address should a subsequent motion for preliminary approval of the class action settlement be filed.

1. <u>Class Definition</u>

Neither the settlement agreement nor the parties' joint motion set forth a class definition. However, the class action notice defines the class.

> All persons who are or were employed in California by Defendants as non-exempt (I) shop workers, (2) farm equipment operators and pruners, (3) truck drivers, and (4) weighers at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion. The Settlement Class does not include immediate family members of Defendants (i.e. individuals with the last name of "Martin" that were included in the positions list provided to Plaintiffs' Counsel).

(ECF No. 18-2 at 39.) The notice states that if the individual was employed between February 16, 2014 and May 27, 2018, then the individual could receive a payment from the proposed

14

settlement. (Id. at 38.) For purposes of clarity, the class notice should not refer to the "Class Period" but should clearly identify the dates of the class period.

Further, in filing a motion for class certification, the class should be defined within the motion itself.

2. Class Action Notice

The class action notice provides that the judge assigned to hear this matter is Judge Stanley A. Boone. (ECF No. 18-2 at 39.) However, the presiding judge in this matter is District Judge Lawrence J. O'Neill as the parties have not consented to the jurisdiction of the magistrate judge. At the March 6, 2019 hearing, counsel was advised that this needs to be corrected unless the parties consent to the jurisdiction of the magistrate judge.

The notice informs the class members that this matter alleges state and federal claims and that the individual will receive their proportional share of the $333,750.00 net settlement fund if they do not opt out of the settlement. (Id. at 39.) Further, the notice provides the amount that the class member is expected to receive and how the monies will be treated under the agreement. (Id. at 39-40.) Directions on how to dispute the amount are provided and the class members have sixty days from the date of mailing to opt out of the class. (Id. at 40, 40.)

The notice informs the class members that they will be bound by the terms of the settlement if they do not opt out and provides instructions for how to opt out of the class. (Id.) The notice informs the class members that they will receive a first payment approximately one and one-half years after final approval of the settlement and a second payment approximately three years after final approval of the settlement. (Id. at 41.)

The notice also provides the class members with instructions on how to object to the settlement. (Id. at 41-42.) Class members object by sending a written objection and supporting papers to the claims administrator within 60 days of the date of mailing of the notice. (Id. at 42.) Any member may object to the settlement and remain a member of the class. (Id.) Only members who do not opt out may object to the settlement. (Id.)

The opt-out form for the class action provides that if a class member chooses to opt-in to the FLSA action, the choice to opt-out of the Rule 23 class action will have no legal effect.

1  (ECF No. 18-2 at 58.) This was addressed at the March 6, 2019 hearing. The Court is cognizant
2  that there is a possibility of confusion due to the parties providing notice to the FLSA class
3  which requires them to opt-in and notice to the Rule 23 class which requires providing the class
4  members the opportunity to opt-out at the same time. See Edwards, 467 F.Supp.2d at 992
5  (confusion results where a collective action and Rule 23 action are allowed to proceed in the
6  same case); Misra v. Decision One Mortg. Co., LLC, 673 F.Supp.2d 987, 994 (C.D. Cal. 2008)
7  (recognizing concerns related to simultaneous pursuit of FLSA opt-in collective action and Rule
8  23 opt-out action). However, the class members have the option to decide which class to
9  participate in and, while it may seem odd for a member to opt-into the FLSA class and opt-out of
10 the Rule 23 class, each class member has that right. For this reason, the parties have agreed to
11 remove the language stating that the opt out form will have no legal effect from the opt-out form.

### 3. Collective Action Notice

The collective action notice also states that the judge assigned to hear this matter is Judge Stanley A. Boone. (ECF No. 18-2 at 44.) However, the presiding judge in this matter is District Judge Lawrence J. O'Neill as the parties have not consented to the jurisdiction of the magistrate judge. At the March 6, 2019 hearing, counsel was advised that this needs to be corrected unless the parties consent to the jurisdiction of the magistrate judge.

The notice informs the class members that this matter alleges state and federal claims and to receive their share of the FLSA settlement the individual must opt-into the class within sixty days. (Id. at 44.) The notice informs the individual who is included in the FLSA action and explains the difference in the dates between the FLSA and Rule 23 classes. (Id. at 44-45.)

The notice provides the amount that the individual would be expected to receive should they opt into the FLSA action and how the amount was calculated. (Id. at 45.) The notice informs the individual how to opt-into the FLSA action. (Id. at 46.)

The notice informs the class members that they will receive a first payment approximately one and one-half years after final approval of the settlement and a second payment approximately three years after final approval of the settlement. (Id. at 46.)

While the notice informs the class of the net settlement fund and does state that

1 approximately nineteen percent of the fund is designated to the FLSA class, the approximate
2 amount should be included to inform the class members of the actual funds that are available.
3 (Id. at 45.)

### 4. Claims Administrator

Although not requested within the motion itself, the order seeks appointment of CPT Group Class Action Administrators as claims administrator. (ECF No. 18-4 at 3.) The Court notes Mr. Martinez declaration states that the claims administrator is to be CPT Group Class Action Administrators. (Decl. of Enrique Martinez ¶ 4.) The class notice does inform the class members that the claims administrator will be paid $20,000.00 (ECF No. 18-2 at 39) and identifies the claims administrator as CPT Group Class Action Administrators (id. at 41). In filing the motion for preliminary approval, the request for appointment of the claims administrator should be addressed within the motion itself.

### 5. Notice to the LWDA

Civil penalties recovered under PAGA are distributed between the aggrieved employees (25%) and the LWDA (75%). Cal. Labor Code § 2699(i). Any settlement of PAGA claims must be approved by the Court. Cal. Labor Code § 2699(l). The proposed settlement must also be sent to the agency at the same time that it is submitted to the court. Cal. Labor Code § 2699(l)(2).

In his declaration, Mr. Martinez states that the LWDA will be served with notice of this motion on the date of filing and proof of service will be provided to the Court. (Decl. of Enrique Martinez ¶ 25.) To date, proof of service on the LWDA has not been filed in this action. Counsel shall file proof of service on the LWDA of any motion for preliminary approval in this action.

## VI.

## CONCLUSION AND RECOMMENDATIONS

As the settlement is currently structured, the Court finds that a conflict of interests exists between the named and unnamed class members that precludes certification of the Rule 23 class in this matter.

17

Based on the foregoing, IT IS HEREBY RECOMMENDED that the motion for 1) preliminary approval of the class action settlement; 2) provisional class certification and appointment of class counsel; 3) approval of form and method of class notice; 4) the scheduling of a final fairness hearing be GRANTED IN PART AND DENIED as follows:

1. Plaintiff's motion for conditional certification of the collective action be GRANTED; and

2. All other aspects of the motion be DENIED WITHOUT PREJUDICE.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 8, 2019**

UNITED STATES MAGISTRATE JUDGE