# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR RODRIGUEZ, et al., | Case No. 1:18-cv-00252-SAB |
| Plaintiffs, | ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| M.J. BROTHERS, INC., et al., | (ECF No. 18, 29) |
| Defendants. | |

## I.

## PROCEDURAL HISTORY

On February 16, 2018, Victor Rodriguez, Estreberto Valdez, Miguel Esparza and Francisco Banda (collectively "Plaintiffs") filed this action on behalf of themselves and all others similarly situated against M.J. Brothers, Inc.; Eduardo Martin; Daniel Martin; Fernando Martin; and Ronald Martin (collectively "Defendants") alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and California labor law. (ECF No. 1.) On February 21, 2019, Plaintiffs consented to the jurisdiction of the magistrate judge. (ECF No. 5.) On April 27, 2018, Defendants filed an answer to the complaint. (ECF No. 7.) On May 8, 2018, the parties filed a stipulation regarding the production of certain discovery and staying this action so they could participate in mediation. (ECF No. 9.) On May 11, 2018, Defendants filed an amended answer. (ECF No. 11.)

A scheduling order issued on October 2, 2018. (ECF No. 15.) On December 4, 2018, the parties filed a notice of settlement of the class and collective actions. (ECF No. 16.) On February 4, 2019, a motion for preliminary approval of the class action settlement and a stipulation to file a first amended complaint was filed. (ECF Nos. 18, 19.) The first amended complaint was filed on February 5, 2019. (ECF No. 22.)

The Court heard oral argument on the motion for preliminary approval of the class action settlement on March 6, 2019. (ECF No. 23.) On March 8, 2019, findings and recommendations were filed recommending granting in part and denying in part Plaintiff's motion for preliminary approval of the class action settlement. (ECF No. 24.)

On March 13, 2019, the Defendants consented to the jurisdiction of the magistrate judge, and a stipulation was filed concerning further proceedings on Plaintiff's motion for preliminary approval of the class action settlement. (ECF Nos. 25, 26.) On March 14, 2019, the parties stipulation was granted, the findings and recommendations were vacated, and the hearing on the motion for preliminary approval of the class action settlement was continued to April 24, 2019. (ECF No. 27.) On March 15, 2019, this matter was reassigned to the undersigned for all purposes as the parties have all consented to the jurisdiction of the magistrate judge. (ECF No. 28.) Plaintiff filed a supplement to the motion for preliminary approval on April 17, 2019. (ECF No. 29.) On April 22, 2019, an order issued finding the matter was suitable for decision without oral argument and the April 24, 2019 hearing was vacated.

## II.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

Defendant M.J. Brothers, Inc. is a California company doing business in Tulare, California. (First Amended Complaint ("FAC") ¶ 11, ECF No. 22.) Defendant M.J. Brothers is co-owned and managed by Defendants Eduardo Martin, Daniel Martin, Fernando Martin, and Ronald Martin (hereafter "the Martins"). (FAC ¶¶ 12-15.) Defendant M.J. Brothers provides machinery and personnel to client dairies at their premises to harvest, transport, and weigh wheat and corn that is used as animal feed. (FAC ¶ 17.) The Martins oversee the company's operations and make decisions regarding scheduling, working conditions, and hiring and

terminating employees.  They visit and oversee operations at the numerous customer worksites and handle administration of many of the company's affairs.  (FAC ¶ 18.)

Four groups of workers are employed by Defendants: 1) shop workers who service trucks and service and clean agricultural equipment at Defendant's shop ("shop workers"); 2) farm equipment operators who work at harvesting ("operators") and pruners; 3) truck drivers who transport wheat and corn from the field to the dairy ("truck drivers"); and 4) weighers who weigh the wheat and corn for purposes of billing clients ("weighers").  (FAC ¶ 19.)

The shop workers are paid at an overtime rate only after having worked more than 10 hours per day or 60 hours per week.  They are not provided with a second meal period after working more than ten hours per day and until recently were not provided with rest periods. (FAC ¶ 20.)

The operators handle farm machinery to harvest corn or wheat at the client's fields. Pruners worked briefly as agricultural workers pruning cherries and pistachios.  Operators worked more than twelve hours per day and were not provided with meal and rest periods until recently.  Pruners worked more than 8 hours per day and were not provided with all their meal and rest periods.  (FAC ¶ 21.)

Truck drivers transport the wheat and corn from the client's fields to their dairies.  Truck drivers are paid at an overtime rate after having worked more than 10 hours per day or 60 hours per week.  Until recently truck drivers were not provided with meal and rest periods.  They typically worked more than 10 hours per day and had to eat in their vehicles.  Truck drivers were required to report to work on days for which they were not selected to work or worked less than 4 hours and were not compensated for all their reporting time.  (FAC ¶ 22.)

Weighers work at the client's premises weighing and recording the wheat and corn brought by truck drivers.  The weighers are paid at an overtime rate after having worked more than 10 hours per day or 60 hours per week.  They typically work more than 12 hours per day and until recently were not provided with meal and rest periods.  Weighers must report to work on days for which they were not selected to work or worked less than four hours and were not compensated for all their reporting time.  (FAC ¶ 23.)

Plaintiff Rodriguez was employed as truck driver from May 2008 to May 2016. (FAC ¶ 7.) Plaintiff Valdez was employed as a truck driver from 2010 to May 2016. (FAC ¶ 8.) Plaintiff Esparza was employed as an operator and shop worker from 2008 to December 2016. (FAC ¶ 9.) Plaintiff Banda was employed as a truck driver and shop worker for over 15 years until May 2017. (FAC ¶ 10.)

Plaintiffs bring this action alleging failure to pay overtime in violation of the FLSA; failure to pay meal and rest periods in violation of California Labor Code section 226.7; failure to provide itemized wage statements in violation of California Labor Code section 226(A); failure to pay for reporting time in violation of Industrial Wage Orders 4, 9, and 14; failure to pay waiting time penalties in violation of California Labor Code section 201, 202, and 203; unfair business practices in violation of California Business and Professions Code section 17200 et seq. and are seeking civil penalties under the California Private Attorney's General Act ("PAGA"), Cal. Lab. Code § 2698 et seq.

**III.**

**LEGAL STANDARD**

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, especially where settlement occurs prior to class certification, courts must peruse the proposed settlement to ensure the propriety of class certification and the fairness of the settlement. Staton v Boeing, 327 F.3d 938, 952 (9th Cir. 2003).

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The

role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).  In reviewing a proposed settlement, the court represents those class members who were not parties to the settlement negotiations and agreement.  In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 448 (C.D. Cal. 2014).

## IV.

## TERMS OF SETTLEMENT AGREEMENT

Under the settlement agreement the Class is defined as:

> all persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators and pruners, (iii) truck drivers, and (iv) weighers at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion.  There are approximately 185 Settlement Class Members.  The Settlement Class does not include immediate family members of Defendants (i.e. individuals with the last name of "Martin" that were included in the positions list of shop workers, farm equipment operators and pruners, truck drivers and weighers provided to Plaintiffs' Counsel, with the exception of Diego Martin, Santiago Martin and Maria R. Martin, who are not immediate family members).

(Amended Stipulation and Agreement to Settle Class and Collective Action ("Amended Stipulation") ¶ 21, ECF No. 29-1.)

The settlement agreement provides for a settlement fund of five-hundred twenty-five thousand dollars ($525,000.00) to resolve all claims of the settlement class for the alleged failure to provide meal and rest breaks and pay wages, penalties, and attorney fees and costs. (Id. at ¶ 34.)  Defendants shall pay the employer's share of the payroll taxes separately.  (Id.) Prior to payment of settlement awards, the common fund shall be reduced by service awards to the named Plaintiffs, an award of attorney fees and costs to class counsel, all costs of settlement administration, and a PAGA payment to the California Labor and Workforce Development Agency ("LWDA").  (Id. at ¶ 35.)  The remaining funds constitute the net settlement fund.  (Id.) The class period is defined as "any time between February 16, 2014 and May 27, 2018."  (Id. at ¶ 6.)

The settlement fund will be funded by six separate installments with the first payment of

$87,500.00 to be made within 180 days from the date of final approval of the settlement. (<u>Id.</u> at ¶ 36.) The following payments shall be made six months after the previous payment. (<u>Id.</u>) In the event that a payment is not made the entire amount shall be immediately due and payable. (<u>Id.</u>) Notice of default shall be given by mail and fax and no other action shall occur until after 10 days have lapsed during which time Defendants have the right to cure any default. (<u>Id.</u>)

The settlement fund shall be distributed in three installments. (<u>Id.</u> at ¶ 37.) The first installment shall be distributed within thirty days of receipt of the first payment from Defendants. (<u>Id.</u>) This installment shall be distributed to pay the costs of claims administration, the PAGA payment to the LWDA, and the attorney's costs in the action. (<u>Id.</u>) The second distribution is to be made within thirty days after the claims administrator receives the third payment from Defendants. (Id.) This payment shall be used to begin paying settlement awards to the class. (<u>Id.</u>) The third distribution shall be made within thirty days after the sixth installment payment is received. (<u>Id.</u>) This distribution shall pay the remaining settlement awards to the class in proportionate shares, the named class member incentive payments, and class counsel's attorney fees. (<u>Id.</u>) Any undistributed funds from checks that are not cashed will escheat to the California Division of Labor Standards Enforcement of Unpaid Wages Fund to be held in the name of and for the benefit of the class member. (<u>Id.</u>)

The claims administrator shall pay from the common fund attorney fees in the amount of one-hundred thirty-one thousand two-hundred fifty dollars ($131,250.00); costs of twelve thousand five hundred dollars ($12,500.00), and five thousand dollars ($5,000.00) to each of the named Plaintiffs. (<u>Id.</u> at ¶¶ 38.1, 38.2.) The net settlement fund is to be allocated in the following manner: twenty percent (20 %) to unpaid wage claims; eighty percent (80 %) to statutory penalties and interest; and ten thousand dollars ($10,000.00) to PAGA penalties. (<u>Id.</u> at ¶ 39.1.) The settlement administrator shall pay the LWDA $7,500.00 in PAGA penalties. (<u>Id.</u> at ¶ 39.2.)

The net settlement fund shall be distributed to the members of the settlement class and FLSA class. (<u>Id.</u> at ¶ 39.3.) The funds shall be distributed based upon the number of payroll periods that the class member worked. (<u>Id.</u>) Each class member shall be paid the amount after

applicable state and federal taxes are withheld. (Id. at ¶ 40.) The settlement administrator shall issue a W-2 for the payment of unpaid wages and a Form 1099 for the portion that is allocated to statutory penalties and interest. (Id. at ¶ 40.)

Defendants agree not to oppose the application for attorney fees or costs by class counsel. (Id. at ¶ 43.)

The class members agree to release

> any and all claims, debts liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney fees, damages, action or causes of action, whether known or unknown, during the Relevant Time Period, as defined below, and that were alleged in the Complaint filed on February 16, 2018, on behalf of the Named Plaintiffs and the Settlement Class Members, based on the facts stated in the Complaint, including, but not limited to allegations, that:
>
> (1) Defendants failed to compensate all straight time worked by Settlement Class Members; (2) Defendants failed to pay overtime compensation under the Fair Labor Standards Act (FLSA); (3) Defendants failed to provide meal periods, or compensation in lieu thereof, in violation of California Labor Code sections 226.7 and 512 and the applicable Industrial Welfare Commission Wage Order; (4) Defendants failed to authorize and permit rest periods, or compensation in lieu thereof, in violation of California Labor Code section 226.7 and the applicable Industrial Welfare Commission Wage Order; (5) Defendants failed to compensate for reporting time, in violation of the applicable Industrial Welfare Commission Wage Order; (6) Defendants failed to provide itemized employee wage statements, in violation of California Labor Code sections 226, 1174, and 1175 and the applicable Industrial Welfare Commission Wage Order; (7) Defendants failed to timely pay wages due at termination, in violation of California Labor Code sections 201-203 and 205; (8) Defendants engaged in unlawful business practices in violation of California Business and Professions Code section 17200, et seq; (9) Settlement Class Members are entitled to PAGA penalties pursuant to California Labor Code Sections 2698, et seq.; (10) Settlement Class Members are entitled to declaratory relief to determine whether the practices alleged in the Complaint are unlawful; (11) Settlement Class Members are entitled to injunctive relief to halt any practices alleged in the Complaint that are unlawful; (12) Settlement Class Members are entitled to restitutionary damages under California Business & Professions Code sections 17200, et seq.; (13) Defendants are liable for attorneys' fees and/or costs incurred to prosecute this action on behalf of Settlement Class Members, including fees incurred for the services of Class Counsel; and (14) Defendants are liable for any other remedies, penalties, and interest under California Labor Code sections 201, 202, 203, 205, 226, 226.7, 510, 512, 1174, 1194, 1194.2, 1197, 1197.1, 2699, and the applicable Industrial Welfare Conmission Wage Order. If a person opt-outs of the Class after receiving the Class Notice, his or her California claims will not be released and will not barred by res judicata in any future legal proceedings. If a person does not submit a consent to join/opt-in to the FLSA action, that person's FLSA claim will not be released, regardless of whether he or she is part of the Class Settlement.

(Id. at ¶¶ 17, 31.) The named Plaintiffs agree to release any and all claims they may have against the defendants based on any events occurring up to the effective date of the settlement

agreement, whether known or unknown, except for claims that may not be released as a matter of law.  (<u>Id.</u> at ¶ 32.)

Workers who consent to join or opt into the FLSA class action will be releasing their FLSA claims.  (<u>Id.</u> at ¶ 39.4.)

The claims administrator shall mail by U.S. mail the class notice and FLSA notice and dispute forms in English and Spanish.  (<u>Id.</u> at ¶ 49.3(a)(b).)  The notices shall be mailed to the most current mailing address available.  (<u>Id.</u> at ¶ 49.3(b).)  For any notices that are returned as undeliverable, the class administrator shall use appropriate search methods to attempt to obtain a new address and re-mail the notice if a new address is obtained.  (<u>Id.</u> at ¶ 49.3(b).)  If the claims administrator is unable to obtain a new address within thirty days of the original mailing date or 45 days after a notice is returned as non-deliverable, the claims administrator shall be deemed to have satisfied its obligation to mail class notice.  If a class member does not obtain notice through these procedures, the intended recipient shall nevertheless be deemed to be bound by the terms of the settlement agreement.  (<u>Id.</u> at ¶ 49.3(b).)  The claims administrator shall provide Plaintiff's counsel all opt-in forms for the FLSA class so they can be filed with the court. (<u>Id.</u>)

Any objections to the settlement must be submitted in writing.  (<u>Id.</u> at 49.3(c).)  No member shall be entitled to object at the final hearing unless a written objection is submitted to class counsel stating the intent to appear.  (<u>Id.</u>)

All members of the settlement class and those members who opt into the FLSA class action shall receive a settlement award.  (<u>Id.</u> at 49.3(f).)  The settlement administrator shall determine the amount of the award to each class or collective action member.  (<u>Id.</u>)

## V.

## DISCUSSION

### A.  Certification of the Rule 23 Class

Even where the certification of the class is unopposed, the court must examine whether the settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure of numerosity, commonality, typicality, and adequacy of representation.  <u>Hanlon v.</u>

Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). The court is required to pay " 'undiluted, even heightened attention' to class certification requirements in a settlement context." Hanlon, 150 F.3d at 1019 (quoting Amchem Products, Inc. v. Windsor ("Amchem"), 521 U.S. 591, 620 (1997)). The dominant concern of Rule 23(a) and (b) is whether the proposed class has sufficient unity so that it is fair to bind absent class members to the decisions of the class representatives. Amchem, 521 U.S. at 621.

1.    Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Records produced by Defendants show that there are 185 putative class members. (Decl. of Enrique Martinez ¶ 13, ECF No 18-2.) The number of individual class members in this instance exceeds the number that has been found to be so numerous that joinder of all members would be impracticable. See Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members"); Cervantez v. Celestica Corp., 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.") The class of 185 members satisfies the numerosity requirement.

2.    Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe Rule 23(a)(2)'s commonality requirement permissively. Cervantez, 253 F.R.D. at 570. The key inquiry is "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' " Arredondo v. Delano Farms Co., 301 F.R.D. 493, (E.D. Cal. Feb. 21, 2014) (citations omitted). Commonality is not required for all of the claims. It is sufficient if there is one single issue common to the proposed class. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010).

Plaintiffs argue that all class members "were treated identically under Defendants' uniform policies and practices with regard to overtime pay, meal and rest periods, and reporting

time pay." (ECF No. 18-1 at 16.) Plaintiffs contend that all class members were subject to the same level of control by all the defendants and the questions common to the class include:

- Whether certain class members were entitled to overtime compensation under FLSA after working forty hours per week and, if so, whether they were paid in compliance with that requirement;
- Whether certain class members were entitled to overtime compensation under the California Labor Code and, if so, whether they were paid in compliance with those requirements;
- Whether Defendants' failed to provide class members with meal periods as required by law;
- Whether class members were provided with their rest breaks, as required by law;
- Whether class members are entitled to statutory premium pay for every day they missed a meal or rest break;
- Whether certain class members were unlawfully denied reimbursement for work-related expenses;[1]
- Whether Defendants provided class members with accurate itemized statements in accordance with state law; and,
- Whether Defendants failed to pay waiting time penalties to former employees for all of their wages due.

(ECF No. 18-1 at 17.) Plaintiffs argue that the answer to these questions will resolve the claims of all class members in one stroke.

Plaintiffs contend that Defendants had a company-wide policy of requiring employees to work more than 10 hours per day or 60 hours per week without paying them overtime or providing them with rest and meal breaks as required under California law. Further, Plaintiffs allege that truck drivers and weighers were required to report for work on days for which they were not selected to work or worked less than four hours without receiving reporting time compensation. Plaintiffs have sufficiently shown that they suffered a common injury which is capable of resolution on a class wide basis. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, (2011). The facts and legal issues are substantially identical for the class members. The Court finds that class relief based upon commonality is appropriate in this instance.

3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This does not require the claims to be substantially identical, but that the representatives' claims be "reasonably co-extensive with

---

[1] The Court notes that there are no claims in this action that employees were not paid for work related expenses.

10

those of the absent class members." Hanlon, 150 F.3d at 1020. Typicality is determined by looking to the nature of the claims of the class representatives and tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D.Cal.1985)).

Plaintiffs allege that they and the unnamed class members worked under the same terms and conditions of employment as the other members of the proposed class. (Decl. of Enrique Martinez ¶ 8.) In each job category, the proposed class members were treated identically under Defendants' uniform policies and practices with regard to overtime pay and meal and rest breaks. (Id.) The truck drivers and weighers were treated the same with regards to the failure to provide reporting time pay. (Id.)

Here, the named plaintiffs' claims are typical to the claims of the purported class members because they were all subjected to the same failure to pay overtime and receive meal and rest breaks. The Court does note that none of the named Plaintiffs worked as weighers or pruners. However, the weighers and pruners were subjected to the same failure to pay overtime and provide rest and meal periods as the rest of the class. Similarly, the weighers were subjected to the same failure to pay reporting time wages as the truck drivers.

The Court finds that Plaintiffs have satisfied the typicality requirement.

4. **Adequacy**

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted). This

inquiry is given heightened scrutiny in "cases in which class members may have claims of different strength." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that they share the same interests as the putative class members in seeking unpaid overtime compensation, penalties for missed meal and rest breaks, and other forms of relief that are identical due to Defendants' alleged misconduct. (ECF No. 18-1 at 18.) Further, Plaintiffs contend that their interests are representative of and consistent with the class and they have actively participated in this litigation which demonstrates they have and will continue to protect the interests of the proposed class. (Id. at 18-19.)

The threshold to be named as lead plaintiff representing the class is fairly low: "[t]he fact that plaintiffs are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy." Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 617 (N.D. Cal. 2014) (quoting Hodges v. Akeena Solar, Inc., 274 F.R.D. 259, 267 (N.D. Cal. 2011).

The Court had initially expressed concern because the named class members were to receive an incentive award in the first distribution while the class members would not receive a settlement payment until the second distribution approximately a year and a half later. The parties have revised the settlement agreement so that the class members will receive their settlement payments with the second distribution, but the named class member incentives will not be paid until the third distribution.

The Court finds that the parties have adequately addressed the concern regarding whether this payment created a conflict with the class by ensuring that the class members will be receiving their payments first. There are no actual, potential or perceived conflicts of interest with any of the class members. (Decl. of Enrique Martinez ¶ 19.) The Court finds that the named class members can adequately represent the unnamed class members in this action.

In addition, "class counsel must be qualified, experienced, and generally able to conduct the class action litigation." Bellinghausen, 303 F.R.D. at 617. Plaintiffs' counsel, Enrique Martinez, and John E. Hill have significant experience in litigating similar class actions. (Decl. of Enrique Martinez ¶¶ 22, 23, 24.) There are no actual, potential or perceived conflicts of

interest with any of the class members.  (Decl. of Enrique Martinez ¶ 22.)  The Court finds that the class has adequate representation in this matter.

     5.    <u>Rule 23(b)(3)</u>

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." <u>Hanlon</u>, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed.1986)).

    **a.**    **Predominance**

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 663 (E.D. Cal. 2008). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).  Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative rather than individual basis. <u>Alberto</u>, 252 F.R.D. at 663.

As discussed above, Plaintiffs allege that the class members here have all been subjected to the same employment terms and conditions which caused them harm and the same damages are available.  Plaintiff argues that there are few individual factual issues, other than the number of hours each employee worked which is reflected in time records and the calculation of individual damages.  The applicable law governing the overtime pay requirements, meal and break periods, and the statutory basis for the remaining claims will be the same for each class member.  Therefore, the predominance inquiry is satisfied.

### b.    Superiority

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. Amchem, 521 U.S. at 620.

The parties are unaware of any concurrent litigation regarding the issues raised in this action. Absent any competing lawsuits, it is unlikely that other employees have an interest in controlling the litigation. Moreover, the class members will be given the opportunity to object at the fairness hearing.

The purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 722 (9th Cir. 2010) (quoting Blackie v. Barrack, 524 F.2d 891, 899 (9th Cir. 1975). Here, the action consists of approximately 185 individuals who are low-wage workers and many of them no longer work for Defendants. (Decl. of Enrique Martinez ¶¶ 13, 18.) Plaintiffs contend that none of the class members appears to have the means to finance an individual lawsuit; and the individual claims are too small to justify the cost of private counsel to file and prosecute individual actions. (Id. at ¶ 18.) Allowing this action to proceed as a class action appears to be the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member.

The Court finds that class certification should be granted for the purposes of settlement of this action.

### B.    Certification of the FLSA Class

Plaintiffs also request that this matter be certified as a collective action under the FLSA. The FLSA provides the right of an employee to represent similarly situated employees in a suit against their employer for the failure to pay minimum wage or overtime compensation. 29 U.S.C. § 216(b). Unlike a class action under Rule 23, to participate in the collective action an

employee is required to give his consent in writing to become a party. 29 U.S.C. § 216(b); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate). "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action." Edwards v. City of Long Beach, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006).

Determining whether a collective action is appropriate is within the discretion of the district court. Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004). However, "[n]either the FLSA, nor the Ninth Circuit, has defined the term 'similarly situated' for purposes of certifying a collective action." Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324, 1340 (N.D. Cal. 2014). While it is unclear what standard should be used to determine if the employees are similarly situated under the FLSA, given that the employee consents to participating in the FLSA actions courts do find that "the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure." Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); accord Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 607 (E.D. Cal. 2015).

Federally courts generally use a two-step approach to determine whether to allow a collective action to proceed. Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 323 (N.D. Cal. 2013). Initially, the court determines whether the potential class members should receive notice of the action, and plaintiffs can satisfy their burden to show that they are "similarly situated" by making substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." Nen Thio., 14 F.Supp.3d at 1340 (citations omitted). The determination is based on a fairly lenient standard, and typically results in conditional certification. Id. The second certification decision is usually made at the close of discovery when the defendant brings a motion to decertify the class and the "courts apply a stricter standard for similarly situated employees and review several factors,

including whether individual plaintiffs' claims involve disparate factual or employment settings; the various defenses available to the defendant which appear to be individual to each plaintiff; as well as fairness and procedural considerations." Id. at 1341.

As discussed above, the putative class members appear to be similarly situated because their alleged injuries arise from Defendants' uniform policies and practices with regard to overtime pay, meal and rest periods, and reimbursement of work-related expenses. Under the FLSA's lenient standard the first step has been met. As Defendants will not seek decertification of the class, the FLSA class is conditionally certified.

### C. Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that class treatment and FLSA certification appear to be warranted, the Court addresses Federal Rule of Civil Procedure 23(e)(2) which requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. Review of the proposed settlement of the parties proceeds in two phases. True, 749 F.Supp.2d at 1062. At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. Id. at 1063. At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. Id.

The court considers a number of factors in making the fairness determination including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[2] and the reaction of the class members to the proposed settlement." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).

When the settlement takes place before formal class certification, as it has in this

---

[2] Since there is no government participant in this action, this factor does not weigh in the Court's analysis.

instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

"[S]ettlements of collective action claims under the FLSA also require court approval." Nen Thio, 14 F.Supp.3d at 1333. "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013). Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court." Nen Thio, 14 F.Supp.3d at 1333. When confronted with a motion to settle an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. (internal punctuation and citations omitted).

1.   Preliminary Determination of Adequacy

"To determine whether a settlement falls within the range of possible approval, a court must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." Lusby v. Gamestop, Inc., 297 F.R.D. 400, 415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

The parties have engaged in extensive communication and correspondence regarding the

case and Defendants have provided time records and payroll and other records for all 185 putative class members. (Decl. of Enrique Martinez at ¶ 13.) These records were used by Plaintiffs' counsel to calculate class damages. (Id..) Plaintiffs' counsel has performed extensive legal research and factual analysis and met with the putative class members on more than seven occasions. (Id. at ¶ 14.) The parties participated in a full-day mediation with a professional mediator experienced in employment litigation. (Id. at ¶ 12.) Although the parties were not able to reach agreement during the mediation, they did come to an agreement several weeks later through a mediator's proposal. (Id.) While Defendants deny any liability or wrongdoing, they have concluded that further defense of the action would be protracted and expensive. (ECF No. 29-1 at ¶¶ 25, 29.) The Court finds that the agreement appears to be the result of vigorous arms-length bargaining.

The settlement agreement provides a settlement fund of $525,000. The class incentive payments of $20,000; class counsel's fees of $131,250 and costs of $12,500; payment to the LWDA of $7,500; and the claims administration fee of $20,000 shall be deducted from the gross settlement fund. After the agreed upon deductions, the net settlement fund will be $333,750 to be distributed to the class members. Nineteen percent of the fund is to be allocated to the FLSA claims. (Amended Stipulation at ¶ 39.3.) Plaintiffs contend that the amount agreed to in settlement is approximately sixty-six percent of the primary claims. (Decl. of Enrique Martinez ¶ 16.) As many of the employees were seasonal and employed for only a short period of time, counsel has estimated that this will result in payments from $18 to $14,400, with the average class member recovering $1,804. (Id. at ¶ 17.) Further, Defendants have changed their practices and employees are now receiving their meal and rest periods. (Id. at ¶ 15.)

While the Court is aware that the structure of the settlement is unusual here as the defendants are making the payments in installments, class counsel has determined that this payment plan is the preferred outcome under the circumstances as it maximizes the recoverable amount while preventing Defendants from filing bankruptcy. (Decl. of Enrique Martinez ¶ 7.) In making this determination, counsel relied on the opinion of Mr. Michael Murray, a neutral

and independent CPA, who was retained to review Defendants' financial status. (Id.) Mr. Murray reviewed the following documents in evaluating Defendants' financial status.

  a. M.J. Brothers' Financial Statements and Supplementary Information for 2016 and 2017

  b. M.J. Brothers' tax returns for 2016 and 2017

  c. M.J. Brothers' Profit & Loss Statements for 2017 and 2018

  d. Personal income tax returns for Eduardo Martin for 2016 and 2017

  e. Personal income tax returns for Fernando Martin for 2016 and 2017

  f. Personal income tax returns for Daniel Martin for 2016 and 2017

  g. Personal income tax returns for Ronald Martin for 2016 and 2017

(Decl. of Michael P. Murray ¶ 5.)  After reviewing the documents, Mr. Murray formed the opinion that Defendants would not be able to pay a higher settlement amount over the schedule set forth and that amount was reasonable and prudent in light of Defendants' financial status. (Id. at ¶ 7.)

  The benefit that the class members will receive is not insubstantial and the proposed settlement structure appears to be reasonable in the circumstances to ensure that the class members will be compensated.  The Court finds that the settlement falls within the reasonable range.

  2. <u>PAGA Penalties</u>

  The claims brought in this action include claims under California's Private Attorneys Generals Act ("PAGA").  Pursuant to PAGA, any provision of the California Labor Code that provides for the assessment and collection of a civil penalty by the LWDA for a violation of the Labor Code may be recovered through a civil action brought by an aggrieved employee on behalf of herself and other current or former employees.  Cal. Lab. Code § 2699(a).  An aggrieved employee is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Lab. Code § 2699(c).  In bringing a representative action under PAGA, the aggrieved employee is acting as the proxy or agent of the state's labor law enforcement agencies.  <u>Arias v. Superior Court</u>, 46 Cal. 4th 969,

1    986 (2009).

2        Civil penalties recovered under PAGA are distributed between the aggrieved employees

3    (25%) and LWDA (75%).  Cal. Labor Code § 2699(i).  Any settlement of PAGA claims must

4    be approved by the Court.  Cal. Labor Code § 2699(l).  The proposed settlement must also be

5    sent to the agency at the same time that it is submitted to the court.  Cal. Labor Code §

6    2699(l)(2).

7        The terms of the settlement involves a $525,000 payment from Defendants.  Of this

8    $525,000 sum, the parties apportion $10,000 toward the PAGA claims, resulting in a $7,500

9    payment to the LWDA.  Plaintiffs filed a copy of the motion for preliminary approval of the

10   class action settlement with the LWDA.  (ECF 29-2.)  The LWDA has not filed an objection to

11   the terms of the settlement.  Based on the LWDA's lack of objection, the Court preliminarily

12   approves the PAGA penalties.

13            3.    Class Representative Enhancement Payment

14       The class representatives are each seeking an enhancement payment of $5,000.  (Decl.

15   of Enrique Martinez ¶ 20.)   In assessing the appropriateness of class representative

16   enhancements or incentive payments, the Court must consider factors such as the actions the

17   plaintiffs took to protect the interests of the class, the degree to which the class has benefitted,

18   the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or

19   personal difficulties encountered by the representative plaintiff.  Khanna v. Intercon Sec.

20   Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014);

21   Reibstein v. Rite Aid Corp., 761 F.Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton, 327

22   F.3d at 975-77.

23       Here, the action was filed on February 16, 2018, and settlement was reached

24   approximately 10 months later.  (ECF No. 16.)  For a large part of this time the matter was

25   stayed for the parties to engage in mediation.  (ECF No. 10.)  Plaintiffs allege that they

26   participated in numerous strategy meetings, assisted counsel in investigating the case, spoke

27   with many other workers about the case and took time off work without compensation to attend

28   various meetings.  (Decl. of Enrique Martinez ¶ 20)  Further, Plaintiffs contend that they took

personal risks in serving as representatives in this lawsuit. (Id. at ¶ 21.)

However, the Court finds that this amount appears to be excessive in relation to the efforts and time the class representatives devoted to this action. In similar cases, this Court has found enhancement payments between $2,500 to $3,000 to be reasonable and fair to the putative class. See Gonzalez v. Harris Ranch Beef Co., No. 1:14-CV-00038-LJO, 2015 WL 4964794, at *5 (E.D. Cal. Aug. 19, 2015), report and recommendation adopted in part, rejected in part, No. 1:14-CV-00038-LJO, 2015 WL 5173524 (E.D. Cal. Sept. 3, 2015) (awarding $2,500 to class representative); Valdez v. Neil Jones Food Co., No. 1:13-CV-00519-SAB, 2016 WL 4247911, at *14 (E.D. Cal. Aug. 10, 2016) see also Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500 where action settled for $400,000.00 and each class member will receive $65.79); Wolph v. Acer America Corporation, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000 where named representatives did not demonstrate any great risk to either finances or reputation in bringing the class action); Rigo v. Kason Industries, Inc., No. 11-cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award for more than two years of service well within the acceptable range); Vinh Nguyen v. Radient Pharmaceuticals Corp., No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000 for class representatives where settlement was reached after discovery was completed, class representatives participated in depositions, and class settled for $2.5 million).

In this instance, the Court finds that $3,500.00 would be reasonable compensation for the time the services provided by the class representatives in this action given the risks that they took in representing the class and the time spent adjudicating this action. However, the named representatives may present additional evidence on final certification in support of a request for addition compensation.

4.    Attorney Fees

Plaintiffs are seeking attorney fees in the amount of twenty-five percent of the common fund. In the Ninth Circuit, courts typically calculate twenty-five percent of the common fund as

the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011). The usual range for common fund attorney fees are between twenty to thirty percent. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

Class counsel is seeking $131,250 in attorney fees which is 25% of the gross settlement amount. (Amended Stipulation ¶ 38.1.) Additionally, counsel seeks $12,500 in costs. (Id.) The Court does note that this action was filed just over a year ago and Plaintiff has provided no information for the Court to determine if the fee is actually reasonable in relation to the number of hours that have been devoted to this action. At the final approval hearing, the Court will employ the lodestar method as a cross check on the percentage method to ensure a failure and reasonable result. Alberto, 252 F.R.D. at 668. Therefore, counsel is advised that in submitting the final approval of class action settlement they will be required to provide a thorough fee award petition that details the hours reasonably spent representing Plaintiffs in this action as well as documentation to support the costs which are sought to be reimbursed.

5.   Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon, 150 F.3d at 1025. Rule 23 requires that notice for any class certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(b)(2)(B). "Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is 'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " Wright, 259 F.R.D. at 475 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 318 (1950)).

The settlement agreement provides that Defendants shall provide the claims administrator with a list of all members of the settlement class, their last known address, telephone number, and the last four digits of their Social Security number or individual taxpayer identification number. (Amended Stipulation ¶ 49.3(a)). The claims administrator shall

prepare, print, and mail to members the class notice.  (Id.)  A Spanish language translations of the materials will be included as part of the same mailing.  (Id.)  The claims administrator shall mail the class notice using the United States mail to the most current mailing address available.  (Id. at ¶ 49.3(b).)

### a.    Class Action Notice

The class action notice informs the class members that this matter alleges state and federal claims and that the individual will receive their proportional share of the $333,750.00 net settlement fund if they do not opt out of the settlement.  (ECF No. 29-1 at 33-34.)  The notice informs the class member of the specific claims that are at issue in the lawsuit.  (Id. at 34.)  Further, the notice provides the amount that the class member is expected to receive and how the monies will be treated under the agreement.  (Id. at 34-35.)  Directions on how to dispute the amount are provided and the class members have sixty days from the date of mailing to opt out of the class.  (Id. at 35, ECF No. 18-2 at 49-50.)

The notice informs the class members that they will be bound by the terms of the settlement if they do not opt out and provides instructions for how to opt out of the class.  (ECF No. 29-1 at 35.)  The notice informs the class members that they will receive a first payment approximately one and one-half years after final approval of the settlement and a second payment approximately three years after final approval of the settlement.   (Id. at 35-36.)  Instructions and a form for opting out of the settlement are included.  (Id. at 36, 44.)

The notice also provides the class members with instructions on how to object to the settlement.  (Id. at 36-37.)  Class members object by sending a written objection and supporting papers to the claims administrator within 60 days of the date of mailing of the notice.  (Id. at 36.)  Any member may object to the settlement and remain a member of the class.  (Id.)   Only members who do not opt out may object to the settlement.  (Id. at 37.)

### b.    Collective Action Notice

The collective action notice informs the class members that this matter alleges state and federal claims and to receive their share of the FLSA settlement the individual must opt-in to the class within sixty days.  (ECF No. 29-1 at 39.)  The notice informs the individual who is

included in the FLSA action and explains the difference in the dates between the FLSA and Rule 23 classes.  (Id. at 39-40.)

The notice provides the amount that has been allocated to the FLSA class and the amount that the individual would be expected to receive should they opt into the FLSA action and how the amount was calculated.  (Id. at 40)  The class members are informed of how to dispute their estimated award.  (Id.)  The notice informs the individual that to receive a portion of the FLSA settlement fund they must opt in to the FLSA class and how to do so.  (Id. at 40-41.)  The collective action members have sixty days from the date of mailing of the notice to opt in to the action.  (Id. at 39.)

The notice informs the class members that they will receive a first payment approximately one and one-half years after final approval of the settlement and a second payment approximately three years after final approval of the settlement.  (Id. at 41.)

The Court finds that the notice and the manner of providing notice are the best notice that is practicable under the circumstances and the proposed notice to the Rule 23 class and FLSA class are approved.

**D.  Class Counsel**

Plaintiff seeks appointment of John Hill and Enrique Martinez as class counsel.  Under Rule 23 a court must appoint class counsel upon certifying the class. Fed. R. Civ. P. 23(g)(1). In appointing class counsel the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Counsel has conducted an investigation which included interviewing the named plaintiffs and numerous other members.  (Decl. of Enrique Martinez ¶ 15.)  There was extensive communication regarding the case between counsel for the parties.  (Id. ¶ 13.)  Defendants provided payroll and time records and related documents for all class members prior settlement of the case.  (Id. ¶ 13.)  Counsel met with other class members and obtained signed declarations

1  to support the claims in this action.  (Id. at 14)  Counsel engaged in a full-day mediation with a
2  professional mediator experienced in employment actions.  (Id. ¶ 12.)

3      Mr. Martinez represents that his firm has decades of experience in handling class action,
4  other complex litigation, and claims based on the same substantive law asserted in this action.
5  (Decl. of Enrique Martinez ¶ 22.)  The firm has represented thousands of other workers in
6  lawsuits of similar size, scope, and complexity to the present action and has been appointed as
7  class counsel in each action in which appointment has been sought.  (Id.)

8      Mr. Martinez graduated from UCLA Law School in 1995 and began his legal career
9  working primarily on civil rights and employment class actions.  (Id. at ¶ 23.)  He has litigated
10  over 35 wage and hour class action involving claims similar to those at issue in this action.  (Id.)
11  His representation has resulted in favorable settlements that have recouped millions of dollars in
12  unpaid wages and penalties.  (Id.)  Mr. Martinez' practice has primarily focused on labor and
13  employment law representing low-wage and immigrant workers.  (Id.)  Mr. Martinez is a
14  member of the California Employment Lawyer's Association ("CELA") and a former chair of
15  the CELA Immigrant Employment Rights Committee.  (Id.)  He has also served on various non-
16  profit organization boards and is a past president of La Raza Centro Legal in San Francisco.
17  (Id.)  Mr. Martinez is a frequent speaker on employment matters at the Mexican Consulate and
18  at statewide and national conferences for CELA and the National Employment Lawyers
19  Association.  (Id.)

20      Mr. Hill is experienced in civil litigation with over 49 years of experience.  (Decl. of
21  Enrique Martinez ¶ 23; see also Curriculum Vitae of Attorney John Hill, ECF No. 18-2 at 60-
22  81.)  The Law Firm of John E. Hill has the necessary resources to provide representation in this
23  matter.  (Decl. of Enrique Martinez ¶ 24.)

24      The Court finds that Mr. Martinez, Mr. Hill, and the Law Firm of John E. Hill have the
25  requisite experience, knowledge, qualifications, and resources to represent the class members in
26  this litigation.  The Court shall appoint Mr. Martinez and Mr. Hill of the Law Firm of John E.
27  Hill to serve as class counsel for the purpose of settlement of this action.

28  / / /

**E.    Claims Administrator**

Plaintiffs also seek appointment of CPT Group Class Action Administrators as claims administrator. Counsel states that he has used CPT Group Class Action Administrators in the past and has found them to be the best choice given the quality of their work and the lower cost compared to other firms. The Court shall appoint CPT Group Class Action Administrators as claims administrator in this action.

## VI.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    The motion for preliminary approval of the class action settlement; provisional class certification and appointment of class counsel; approval of form and method of class notice; and the scheduling of a final fairness hearing are GRANTED;

2.    This action is provisionally certified as a class and collective action, for the purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23 (for the California claims) and 29 U.S.C. § 201 et seq. (for the FLSA claim).

3.    The settlement class is defined as "all persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators and pruners, (iii) truck drivers, (iv) weighers, and (v) pruners at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion." The Settlement Class does not include immediate family members of Defendants (i.e. individuals with the last name of "Martin" that were included in the positions list of shop workers, farm equipment operators and pruners, truck drivers and weighers provided to Plaintiffs' Counsel).

4.    Certification of the settlement class shall be solely for the purposes of settlement and without prejudice to the parties in the event the settlement is not finally approved by this Court or otherwise does not take effect.

5.    The settlement is preliminarily approved as fair, reasonable, and adequate, entered

1 into in good faith, free of collusion, and within the range of possible judicial

2 approval.

3     6.    The following attorneys are appointed as class counsel:

4         John E. Hill, State Bar No. 45338
        Enrique Martinez, State Bar No. 206884
5         Law Offices of John E. Hill
        333 Hegenberger Road, Ste. 500
6         Oakland, CA 94621
        Telephone:   (510) 588-1000
7         Facsimile:   (510) 632-1445
        Email: enriquemartinez@hill-law-offices.com
8

9     7.    Victor Rodriguez, Estreberto Valdez, Miguel Esparza, and Francisco Banda are

10 appointed as class representatives.

11     8.    CPT Group Class Action Administrators is appointed to serve as the settlement

12 administrator and to carry out all duties and responsibilities of the claims

13 administrator as specified in the settlement.

14     9.    The method of disseminating notice to the settlement class and members of the

15 FLSA collective action in Spanish and English, as set forth in the settlement, is

16 approved.

17     10.    Not later than five (5) days from the date of this order, Defendants' counsel shall

18 provide to the claims administrator and class counsel a list of all members of the

19 settlement class and the FLSA collective action, their last known addresses,

20 telephone numbers, and the last four digits of their social security or individual

21 taxpayer identification numbers. Class counsel shall supplement this information

22 with any more recent contact information available for members of the settlement

23 class and the FLSA collective action.

24     11.    No later than fourteen (14) days from the date of this order, the claims

25 administrator shall send a copy of the class notice, the FLSA notice and consent

26 to join/opt-in form (if applicable), and dispute form to members of the settlement

27 class and the FLSA collective action via first class regular U.S. mail, postage

28 prepaid, using the most current mailing address information available.

12.     A final fairness hearing shall be held on **August 21, 2019 at 10:00 a.m.** in Courtroom 9.

13.     A motion for final approval of the settlement including a motion for attorney fees shall be filed on or before **July 24, 2019**.

14.     The parties shall file any responses to any objectors on or before **July 31, 2019**.

15.     At no time shall any of the parties or their counsel seek, solicit or otherwise encourage, directly or indirectly, members of the settlement class or members of the FLSA collective action to submit written objections to the settlement, to opt out, or to appeal from the order and final judgment.

IT IS SO ORDERED.

Dated:   **April 24, 2019**  

UNITED STATES MAGISTRATE JUDGE