# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR RODRIGUEZ, et al., | Case No. 1:18-cv-00252-LJO-SAB |
| Plaintiffs, | ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ENHANCEMENT PAYMENTS TO NAMED PLAINTIFFS, AND AWARD OF ATTORNEY FEES AND COSTS AND RETAINING JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT |
| v. | |
| M.J. BROTHERS, INC., et al., | |
| Defendants. | |
| | (ECF Nos. 32, 34) |

Currently before the Court is Plaintiffs' motion for final approval of a class action settlement.  (ECF No. 32.)

The Court heard oral argument on August 21, 2019.  Counsel Enrique Martinez appeared for the class, and counsel Patrick Moody appeared for Defendants.  Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the August 21, 2019 hearing, as well as the Court's file, the Court issues the following order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Victor Rodriguez, Estreberto Valdez, Miguel Esparza and Francisco Banda ("Plaintiffs") are former employees of M.J. Brothers, Inc., a California company doing business in Tulare, California.  Defendant M.J. Brothers is co-owned and managed by Eduardo Martin, Daniel

Martin, Fernando Martin, and Ronald Martin (hereafter "the Martins"). M.J. Brothers provides machinery and personnel to client dairies at their premises to harvest, transport, and weigh wheat and corn that is used as animal feed. The Martins oversee the company's operations and make decisions regarding scheduling, working conditions, and hiring and terminating employees. They visit and oversee operations at the numerous customer worksites and handle administration of many of the company's affairs.

Four groups of workers are employed by MJ Brothers: 1) shop workers who service trucks and service and clean agricultural equipment at their shop ("shop workers"); 2) farm equipment operators who work at harvesting ("operators") and pruners; 3) truck drivers who transport wheat and corn from the field to the dairy ("truck drivers"); and 4) weighers who weigh the wheat and corn for purposes of billing clients ("weighers").

Plaintiff Rodriguez was employed as a truck driver from May 2008 to May 2016. Plaintiff Valdez was employed as a truck driver from 2010 to May 2016. Plaintiff Esparza was employed as an operator and shop worker from 2008 to December 2016. Plaintiff Banda was employed as a truck driver and shop worker for over 15 years until May 2017.

On February 16, 2018, Plaintiffs filed this action on behalf of themselves and all others similarly situated against M.J. Brothers, Inc.; Eduardo Martin; Daniel Martin; Fernando Martin; and Ronald Martin (collectively "Defendants") alleging violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and California labor law. Plaintiffs allege failure to pay overtime in violation of the FLSA; failure to pay meal and rest periods in violation of California Labor Code section 226.7; failure to provide itemized wage statements in violation of California Labor Code section 226(a); failure to pay for reporting time in violation of Industrial Wage Orders 4, 9, and 14; failure to pay waiting time penalties in violation of California Labor Code section 201, 202, and 203; unfair business practices in violation of California Business and Professions Code section 17200 et seq. and they are seeking civil penalties under the California Private Attorney's General Act ("PAGA"), Cal. Lab. Code § 2698 et seq.

On February 21, 2018, Plaintiffs consented to the jurisdiction of a United States magistrate judge. Defendants filed an answer to the complaint on April 27, 2018. On May 8,

1   2018, the parties filed a stipulation regarding the production of certain discovery and staying this

2   action so they could participate in mediation.  Defendants filed an amended answer on May 11,

3   2018.  A scheduling order issued on October 2, 2018.

4          On December 4, 2018, the parties filed a notice of settlement of the class and collective

5   actions.  On February 4, 2019, a motion for preliminary approval of the class action settlement

6   and a stipulation to file a first amended complaint was filed.  The first amended complaint was

7   filed on February 5, 2019.  On March 8, 2019, a findings and recommendations issued

8   recommending granting in part and denying in part the motion for preliminary approval of the

9   class action settlement.  On March 13, 2019, Defendants consented to the jurisdiction of a United

10  States magistrate judge and filed a stipulation for further proceedings on the motion for

11  preliminary approval.  On March 14, 2019, the stipulation was approved and the findings and

12  recommendations were vacated.  On March 15, 2019, the matter was reassigned to the

13  undersigned for all purposes.

14         On April 17, 2019, Plaintiffs filed a supplement to the motion for preliminary approval of

15  the class action settlement.  An order granting the motion for preliminary approval was filed on

16  April 24, 2019.  On July 24, 2019, a motion for final approval of the class action settlement was

17  filed along with proof of service of the motion on the California Labor and Workforce

18  Development Agency ("LWDA").  On August 16, 2019, Defendants filed a statement of non-

19  opposition to the motion requesting that the Court grant final approval of the settlement.

20                                              **II.**

21                                      **LEGAL STANDARD**

22         The Ninth Circuit has declared that a strong judicial policy favors settlement of class

23  actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nevertheless, courts have long

24  recognized that the settlement of class actions presents unique due process concerns for the absent

25  class members.  In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth"), 654 F.3d

26  935, 946 (9th Cir. 2011).  "[T]he district court has a fiduciary duty to look after the interests of the

27  absent class members."  Allen, 787 F.3d at 1223.

28         To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil

Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth, 654 F.3d at 946. Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946); accord Allen, 787 F.3d at 1223.

Review of the proposed settlement of the parties proceeds in two phases. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749 F.Supp.2d at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

### III.

### DISCUSSION

Plaintiffs seek final approval of the class action settlement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, and as a fair and reasonable resolution of a bona fide dispute under the FLSA; certification of the Rule 23 class and of the collective action class under 29 U.S.C. § 216(b); approval that the class notice and FLSA notice complied with law and due process; an enhancement award of $3,500.00 for each named plaintiff; and an award of attorney fees in the amount of $131,250.00 and costs of $11,694.00.

## A.    Final Certification of Class

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

The Court has previously found that the class meets the prerequisites of numerosity, commonality, typicality, and adequacy of representation. (Order Granting Preliminary Approval of Class Action Settlement 7-13, ECF No. 31.) The Court also found that common questions predominate and allowing this action to proceed as a class action is the superior method of adjudicating the controversy of these employment related claims. (Id. at 13-14.) The court found that the putative class members were similarly situated such that the FLSA class should be conditionally certified. (Id. at 14-16.)

None of the 180 class member have objected to the settlement of this action and only two class members have opted out of the settlement. (Martinez Decl. ¶¶ 3, 17.) Counsel does not know of, and the Court is unaware of, any changes that would affect the class and FLSA certification findings. (Decl. of Enrique Martinez in Support of Motion for Final Approval ("Martinez Decl." ¶ 21, ECF No. 32-2.) For the reasons set forth in the April 24, 2019 order on Plaintiffs' motion for preliminary approval of the class action settlement, the Court finds that the settlement classes continue to meet the requirements of Federal Rule of Civil Procedure 23(a) and (b) and the similarly situated requirement of the FLSA. (ECF No. 31 at 8-16.)

Rule 23(c) provides that a class certified under Rule 23(b)(3) must be provided with the best notice that is practicable in the circumstances. Fed. R. Civ. P. 23(c)(2)(B). In this instance, the approved notice was mailed to all class members after updating all addresses by conducting a National Change of Address search. (Decl. of Emilio Cofinco Re. Class Notification and Claims Administration ("Cofinco Decl.") ¶¶ 6, 7, ECF No. 32-3.) The search revealed updated addresses for seven class members. (Id. at 6.) Notices were mailed in English and Spanish along with the

opt-out and dispute forms, the FLSA notice and the FLSA consent to join/opt-in form. (Id. ¶¶ 4, 7; Notice Packet ECF NO. 32-3 at 6-36.) No packets have been returned as undeliverable, although twelve notice packets were re-mailed at the request of counsel or a settlement class member (Cofinco Decl. at ¶ 9.) The Court finds that the notice was sufficient to comply with Rule 23(c).

Having found the Rule 23 and FLSA requirements have been met, the Court will grant final class certification. The following class is certified for settlement in this matter:

> All persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators and pruners, (iii) truck drivers, (iv) weighers, and (v) pruners at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion. The Settlement Class does not include immediate family members of Defendants (i.e. individuals with the last name of "Martin" that were included in the positions list of shop workers, farm equipment operators and pruners, truck drivers and weighers provided to Plaintiffs' Counsel).[1]

**B.      Final Approval of the Class Action Settlement**

The Court next addresses Federal Rule of Civil Procedure 23(e)(2) which requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) (quoting Hanlon v. Chrysler, 150 F.3d 1011, 1026 (9th Cir. 1998). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

"[S]ettlements of collective action claims under the FLSA also require court approval." Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014). "The FLSA establishes

---

[1] The Settlement Agreement clarifies that Diego Martin, Santiago Martin, and Maria R. Martin are not immediate family members and are included in the class. (Amended Stipulation and Agreement to Settle Class and Collective Action ¶ 21, ECF No. 32-2 at 15-41.)

federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court." Nen Thio, 14 F.Supp.3d at 1333.  When confronted with a motion to settle an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. (internal punctuation and citations omitted).

1.    Terms of the Proposed Settlement Agreement

The settlement agreement provides five hundred twenty five thousand dollars ($525,000.00) to resolve all claims of the settlement class for the alleged failure to provide meal and rest breaks and pay wages, penalties, and attorney fees and costs.  (Amended Stipulation and Agreement to Settle Class and Collective Action p. 2, ECF No. 32-2 at 16.)  The settlement class is defined as

> all persons who are or were employed in California by Defendants as non-exempt (i) shop workers, (ii) farm equipment operators and pruners, (iii) truck drivers, and (iv) weighers at any point during the Class Period and who do not properly and timely opt out of the Settlement Class by having requested exclusion.  There are approximately 185 Settlement Class Members.  The Settlement Class does not include immediate family members of Defendants (i.e. individuals with the last name of "Martin" that were included in the positions list of shop workers, farm equipment operators and pruners, truck drivers and weighers provided to Plaintiffs' Counsel, with the exception of Diego Martin, Santiago Martin and Maria R. Martin, who are not immediate family members).

(Id. at ¶ 21.)  The class period is defined as "any time between February 16, 2014 and May 27, 2018." (Id. at ¶ 6.)

The settlement agreement provides for a settlement fund of five-hundred twenty-five thousand dollars ($525,000.00) to resolve all claims of the settlement class for the alleged failure to provide meal and rest breaks and pay wages, penalties, and attorney fees and costs.  (Id. at ¶ 34.) Defendants shall pay the employer's share of the payroll taxes separately.  (Id.)  Prior to any

7

settlement funds being paid to eligible class members, deductions to the common fund shall be made for service awards to the named plaintiffs, an award of attorney fees and costs to class counsel, all costs of settlement administration, and a PAGA payment to the LWDA.  (Id. at ¶ 35.)

The settlement fund will be funded by six separate installments with the first payment of $87,500.00 to be made within 180 days from the date of final approval of the settlement.  (Id. at ¶ 36.)  The following payments shall be made six months after the previous payment.  (Id.)  In the event that a payment is not made the entire amount shall be immediately due and payable.  (Id.)  Notice of default shall be given by mail and fax and no other action shall occur until after 10 days have lapsed during which time Defendants have the right to cure any default.  (Id.)

The settlement fund shall be distributed in three installments.  (Id. at ¶ 37.)  The first installment shall be distributed within thirty days of receipt of the first payment from Defendants.  (Id.)  This installment shall be distributed to pay the costs of claims administration, the PAGA payment to the LWDA, and the attorney's costs in the action.  (Id.)  The second distribution is to be made within thirty days after the claims administrator receives the third payment from Defendants.  (Id.)  This payment shall be used to begin paying settlement awards to the class.  (Id.)  The third distribution shall be made within thirty days after the sixth installment payment is received.  (Id.)  This distribution shall pay the remaining settlement awards to the class in proportionate shares, the named class member incentive payments, and class counsel's attorney fees.  (Id.)  Any undistributed funds from checks that are not cashed will escheat to the California Division of Labor Standards Enforcement of Unpaid Wages Fund to be held in the name of and for the benefit of the class member.  (Id.)

The claims administrator shall pay from the common fund attorney fees in the amount of one-hundred thirty-one thousand two-hundred fifty dollars ($131,250.00); costs of twelve thousand five hundred dollars ($12,500.00), and five thousand dollars ($5,000.00) to each of the named Plaintiffs.  (Id. at ¶¶ 38.1, 38.2.)  The net settlement fund is to be allocated in the following manner: twenty percent (20 %) to unpaid wage claims; eighty percent (80 %) to statutory penalties and interest; and ten thousand dollars ($10,000.00) to PAGA penalties.  (Id. at ¶ 39.1.)  The settlement administrator shall pay the LWDA $7,500.00 in PAGA penalties.  (Id. at ¶ 39.2.)

The net settlement fund shall be distributed to the members of the settlement class and FLSA class. (Id. at ¶ 39.3.) The funds shall be distributed based upon the number of payroll periods that the class member worked. (Id.) Each class member shall be paid the amount after applicable state and federal taxes are withheld. (Id. at ¶ 40.) The settlement administrator shall issue a W-2 for the payment of unpaid wages and a Form 1099 for the portion that is allocated to statutory penalties and interest. (Id. at ¶ 40.)

Defendants agree not to oppose the application for attorney fees or costs by class counsel. (Id. at ¶ 43.)

The class members agree to release

any and all claims, debts liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney fees, damages, action or causes of action, whether known or unknown, during the Relevant Time Period, as defined below, and that were alleged in the Complaint filed on February 16, 2018, on behalf of the Named Plaintiffs and the Settlement Class Members, based on the facts stated in the Complaint, including, but not limited to allegations, that:

(1) Defendants failed to compensate all straight time worked by Settlement Class Members; (2) Defendants failed to pay overtime compensation under the Fair Labor Standards Act (FLSA); (3) Defendants failed to provide meal periods, or compensation in lieu thereof, in violation of California Labor Code sections 226.7 and 512 and the applicable Industrial Welfare Commission Wage Order; (4) Defendants failed to authorize and permit rest periods, or compensation in lieu thereof, in violation of California Labor Code section 226.7 and the applicable Industrial Welfare Commission Wage Order; (5) Defendants failed to compensate for reporting time, in violation of the applicable Industrial Welfare Commission Wage Order; (6) Defendants failed to provide itemized employee wage statements, in violation of California Labor Code sections 226, 1174, and 1175 and the applicable Industrial Welfare Commission Wage Order; (7) Defendants failed to timely pay wages due at termination, in violation of California Labor Code sections 201-203 and 205; (8) Defendants engaged in unlawful business practices in violation of California Business and Professions Code section 17200, et seq; (9) Settlement Class Members are entitled to PAGA penalties pursuant to California Labor Code Sections 2698, et seq.; (10) Settlement Class Members are entitled to declaratory relief to determine whether the practices alleged in the Complaint are unlawful; (11) Settlement Class Members are entitled to injunctive relief to halt any practices alleged in the Complaint that are unlawful; (12) Settlement Class Members are entitled to restitutionary damages under California Business & Professions Code sections 17200, et seq.; (13) Defendants are liable for attorneys' fees and/or costs incurred to prosecute this action on behalf of Settlement Class Members, including fees incurred for the services of Class Counsel; and (14) Defendants are liable for any other remedies, penalties, and interest under California Labor Code sections 201, 202, 203, 205, 226, 226.7, 510, 512, 1174, 1194, 1194.2, 1197, 1197.1, 2699, and the applicable Industrial Welfare Commission Wage Order. If a person opt-outs of the Class after receiving the Class Notice, his or her California claims will not be released and will not barred by res judicata in any future legal proceedings. If a person does not submit a consent to

join/opt-in to the FLSA action, that person's FLSA claim will not be released, regardless of whether he or she is part of the Class Settlement.

(Id. at ¶¶ 17, 31.)  The named Plaintiffs agree to release any and all claims they may have against the defendants based on any events occurring up to the effective date of the settlement agreement, whether known or unknown, except for claims that may not be released as a matter of law.  (Id. at ¶ 32.)

Workers who consent to join or opt into the FLSA class action will be releasing their FLSA claims.  (Id. at ¶ 39.4.)

Any objections to the settlement must be submitted in writing.  (Id. at 49.3(c).)  No member shall be entitled to object at the final hearing unless a written objection is submitted to class counsel stating the intent to appear.  (Id.)

All members of the settlement class and those members who opt into the FLSA class action shall receive a settlement award.  (Id. at 49.3(f).)  The settlement administrator shall determine the amount of the award to each class or collective action member.  (Id.)

2.    Analysis

The court considers a number of factors in making the fairness determination including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." [2]  Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026). All of these factors will not apply to every class action settlement and one factor alone may prove sufficient grounds for court approval.  Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. (DIRECTV), 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688

---

[2] There is no government participant in this matter so this factor is not considered in the analysis.

F.2d 615, 625 (9th Cir. 1982).

a.      **Bona fide dispute**

To approve settlement of an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." Nen Thio, 14 F.Supp.3d at 1333.  The parties agree that there is a bona fide dispute in this action.

Here, the parties dispute whether Defendants are entitled to an exemption under the FLSA for farmers.  The Supreme Court has held that there are two branches of the definition of farming included in the FLSA.

> First, there is the primary meaning.  Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning.  Second, there is the broader meaning.  Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations.

Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762–63 (1949).

The dispute in this instance is whether the specific groups of employees; shop workers, farm equipment operators, truck drivers, and weighers; are exempt under the FLSA agricultural exception.

As to these specific groups of employees, Defendants contend that the shop workers are exempt because they repair machines used in harvesting operations.  Plaintiffs counter that shop workers are not exempt because they are not engaged in farming under the primary definition of agriculture nor do they work on a farm and they are not employed by a farmer as they work for an independent business.

Defendants contend that the truck drivers are exempt because they are part of the harvesting process.  Plaintiff counter the truck drivers are not engaged in farming under either the primary or secondary definition of farming because they haul products off the field and are not employed by farmers.

Defendants contend that the weighers are covered under both the primary and the secondary meanings of agriculture.  But Plaintiffs counter that harvesting never extends to transportation or other operations off the farm and the wheat is transported off the fields before it is

weighed.  The Code of Federal Regulations provides that "[w]hile transportation to a concentration point on the farm may be included, 'harvesting' never extends to transportation or other operations off the farm.  Off-the-farm transportation can only be 'agriculture' when performed by the farmer as an incident to his farming operations."  29 C.F.R. § 780.118(b).

The Court finds that the parties have a bona fide dispute as to whether the specific employee groups qualify for the agricultural exemption for the purposes of the FLSA claims.

  **b.**  **The strength of Plaintiffs' case**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." DIRECTV, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.)).  The court's role is not to reach any ultimate conclusion on the facts or law which underlies the merits of the dispute as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is what induces consensual settlements.  Officers for Justice, 688 F.2d at 625.  In reality, the reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of obtaining it, discounted to a present value."  Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir.2009)).

Plaintiffs' first amended complaint alleges claims for failure to pay overtime wages in violation of the FLSA; failure to pay overtime wages; and failure to provide meal and rest periods; failure to furnish accurate wage statements; unfair business practices, waiting time penalties and PAGA violations under California law.  (ECF No. 22.)  Defendants contend that they are entitled to an affirmative defense for both the FLSA and state law unpaid overtime compensation claims based on the agriculture exemptions.  Plaintiffs take the position that the agriculture exemptions do not apply to the classes at issue in this action based on the nature of the work.

As to the meal and rest break claims, Defendants contend that employees were not prevented from taking meal and rest breaks, but Plaintiff's respond that they were not permitted to take such breaks.  The parties dispute whether Defendants failed to pay reporting time wages.  All the remaining claims are derivative of these claims.

The settlement in this action provides the class members with substantial relief. Given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with a fair resolution of the issues presented which weighs in favor of settlement.

**c.** **The risk, expense, complexity, and likely duration of further litigation**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." <u>DIRECTV</u>, 221 F.R.D. at 526 (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)). The parties contend that absent settlement this action will proceed to a contested motion for class certification of the Rule 23 class as well as the conditional certification of the collective action, and a motion for decertification of the FLSA class, which would result in further litigation expense and delay.

Further, based on the positions of the parties, motions for summary judgment on the farming exemption under the FLSA and state law is fairly certain. Proceeding to conduct merits discovery and potential dispositive motions on the merits of the claims if a class is certified would cause the parties to this action to incur additional expenses that will be avoided by the settlement. Discovery and trial in this matter is also complex due to the fact that this is a class and collective action. Issues with how to present the case to the trier of fact and prove damages on a class wide basis can be expensive and complicated.

If this action were to proceed to trial, the class would be subjected to the risk of receiving nominal recovery or being denied any recovery in this action. Resolving the action at this time saves the parties the expense of conducting further litigation and confers substantial benefit to the class without being subjected to the risks inherent with proceeding to trial of the matter.

The risks inherent in continuing to litigate this action, the additional expenses that would be incurred were this action to proceed, and the complexity of this action weigh in favor of settlement.

**d.** **The amount offered in settlement**

Defendants have offered to settle this action for $525,000.00 and will separately pay their share of the payroll taxes. The amount offered in settlement is approximately sixty six percent (66

13

%) of the maximum potential damages for the primary claims. (Martinez Decl. ¶ 16.) If the maximum statutory penalties are included this would drop the recovery rate to forty percent (40 %). (Id.)

Defendants have offered $525,000.00 in settlement. This amount will be reduced by attorney fees of $131,250.00, costs of $11,694.00, enhancement payments of $14,000.00,[3] LWDA penalties of $7,500.00, and administration costs of $20,000.00.[4] After deducting the attorney fees, costs, service awards, PAGA penalties that go to the LWDA, and settlement administration costs, the net settlement fund is $340,556.00. (Martinez Decl. ¶ 19.)

There are a total of 178 member participating in the settlement. (Cofinco Decl. ¶ 13.) Eighty three employees opted into the FLSA collective action. (Martinez Decl. ¶ 3.) Approximately twenty one percent of the net settlement fund will be distributed to the FLSA collective action. (Id. at ¶ 18.) Depending on the hours worked, hourly rate and payroll periods worked, the individual class members will receive between $12,070.00 and $40.00, with the average individual settlement payment at approximately $1,913.00. (Cofinco Decl. ¶ 13; Martinez Decl. ¶ 19.)

Although the Court recognizes that, based upon the structure of the settlement, there will be some delay in the class receiving a settlement payment, Plaintiffs had a Certified Public Accountant conduct an analysis of Defendants' financial situation. (Decl. of Michael P. Murray Re. Review of Defs.' Financial Records, ECF No. 32-2 at 43-45.) Mr. Murray determined that the settlement as structured is the most that Defendants can provide and that will allow Defendants to survive under the set schedule. (Id.) Class counsel finds that the amount and structure of the settlement maximizes the recoverable amount while preventing Defendants from filing for bankruptcy. (Martinez Decl. ¶ 7.)

The Court finds that the amount offered in settlement of this action weighs in favor of approving the settlement.

---

[3] Each of the four named plaintiffs are to receive $3,500.00.

[4] Cofinco Decl. ¶ 14.

### e. The stage of the proceedings

While a settlement that occurs in an advanced stage of the proceedings indicates that the parties have carefully investigated the claims before resolving the action, <u>Ontiveros v. Zamora</u>, 303 F.R.D. 356, 370 (E.D. Cal. 2014), prior to the mandatory scheduling conference this matter was stayed for the parties to participate in mediation.  (ECF No. 10.)  The matter did not initially settle in mediation and the scheduling order issued on October 2, 2018.  (ECF No. 15.)  Two months later a notice of settlement was filed.  (ECF No. 16.)  Although discovery commenced shortly before the parties reached a settlement in this action, Defendant produced payroll and other related records for the entire class which allowed Plaintiffs to calculate the maximum potential compensation owed.  (Martinez Decl. ¶¶ 10, 13, 16.)  Plaintiffs' counsel traveled to Tulare County, met with many of the settlement class worker, and obtained more than twenty declarations from potential class members.  (<u>Id.</u> at ¶¶ 14, 27.)  In considering the fairness of the settlement, the court's focus is on whether "the parties carefully investigated the claims before reaching a resolution."  <u>Ontiveros</u>, 303 F.R.D. at 371

Although this matter was settled before merits discovery, prior to mediation, Defendants produced the time and pay records for the entire class which allowed class counsel to calculate damages.  (Martinez Decl. ¶ 13.)  Class counsel also met with the putative class members on at least seven occasions to obtain information about the unpaid overtime and other violations and obtained over twenty signed declarations for class certification and liability purposes.  (<u>Id.</u> ¶ 14, 27.)  The parties also participated in a full day mediation with Hon. Howard R. Broadman who is a professional mediator specializing exclusively in mediation of employment matters.  (Martinez Decl. ¶ 12.)  Class counsel performed extensive legal and factual analysis to reach an informed understanding of the claims and potential defenses.  (Martinez Decl. ¶ 14.)

The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a professional mediator in settling the action weighs in favor of approving the class action settlement.

### f. The experience and views of counsel

The Court is to accord great weight to the recommendation of counsel because they are

aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation. <u>DIRECTV</u>, 221 F.R.D. at 528. Class counsel is experienced in class action litigation and has opined that the the settlement agreement in this action is fair and reasonable to the members of the class. (Martinez Decl. ¶ 15, 25, 37.) This weighs in favor of approving the class action settlement.

**g.** **The reaction of the class members to the proposed settlement**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>DIRECTV</u>, 221 F.R.D. at 529. The Rule 23 class here consist of 180 members and 83 members opted into the collective action. (Martinez Decl. ¶ 3, Cofinco Decl. ¶ 12.) Only two members opted out of the Rule 23 class and no class members objected to the settlement. (Martinez Decl. ¶ 17; Cofinco Decl. ¶¶ 10, 12.) The absence of any objections is compelling evidence that the settlement is fair, adequate and reasonable. <u>DIRECTV</u>, 221 F.R.D. at 529. The absence of objecting class members weighs in favor of settlement.

**h.** **Risk of collusion**

Where a class action is settled prior to class certification, the Court must also consider whether there is evidence of collusion or other conflicts of interest before approving the settlement. <u>In re Bluetooth</u>, 654 F.3d at 946. The Ninth Circuit has provided examples of signs that a settlement is the product of collusion between the parties, such as "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . .; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." <u>Id.</u> at 947.

Here, none of the signs of collusion are present. The class in this action is receiving a substantial award with more than $340,000.00 being distributed to the class while class counsel is seeking only twenty-five percent of the common fund, or $131,250.00 in attorney fees.

Although the settlement agreement does provide that Defendants will not oppose the request for attorney fees, the fees requested come from the settlement fund and are reasonable so that does not raise a concern that the settlement is the product of collusion of the parties.

Additionally, the unclaimed funds in this action do not revert to the defendants, but shall be escheat to the State's unclaimed property fund for the benefit of the class member.[5]

Finally, the settlement agreement here was negotiated with the assistance of a mediator who was experienced in wage and hour litigation. (Martinez Decl. ¶ 12.) This supports the finding that there was no collusion between the parties in reaching the agreement.

### g. The factors weigh in favor of approving the class and collective action settlement

After considering the foregoing factors, the Court finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute for settlement of the FLSA action. Further, the Court finds no evidence that the settlement is the result of any collusion between the parties. In re Bluetooth, 654 F.3d at 946–47.

### C. *Cy Pres* Beneficiary

The settlement agreement provides that "any tax refunds received relating to un-cashed checks, along with any funds from checks that are not cashed, will be sent to the State of California Unclaimed Property Fund to be held in the name of and for the benefit of such class members under California's escheatment laws. (Amended Stipulation and Agreement to Settle Class and Collective Action ¶ 37.) In the current motion, Plaintiffs state that the claims administrator has indicated that sending any unclaimed funds to the State Controller would increase the cost of administration fees. Plaintiffs contend that since the claims administrator did not receive any returned notice packets it indicates that all or nearly all of the class member will obtain their settlement share and requests that the Court approve a *cy pres* beneficiary. (ECF No. 32-1 at 27.)

---

[5] While the motion for final approval of the class action settlement proposed distributing any unclaimed funds to a *cy pres* beneficiary, at the August 21, 2019 hearing in response to the Court's concerns regarding whether the change would require re-noticing the class, class counsel withdrew the request to distribute the unclaimed funds in such a manner as discussed below.

The Court expressed concern at the August 21, 2019 hearing that, since settlement payments to the class will be delayed for a year and a half to three years and due to the type of work involved in this action, a large number of the class members may move during the one and a half to three year period that the funds will be distributed.  Given these facts, the question of whether a change in the distribution of unclaimed funds would require sending notice of the change to the class.  See Sylvester v. CIGNA Corp., 369 F.Supp.2d 34, 43 (D. Me. 2005) (finding that revision of settlement agreement which provided that unclaimed funds would revert to defendants may be relevant to some class members decision to file claim forms); compare In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F.Supp.2d 184, 185 (D. Me. 2003) (second amended notice not required to eight million potential class members where they were previously advised of amendments to the settlement agreement and the new changes were favorable to the class).

Class counsel responded that they had been informed by the claims administrator that the Labor Department was no longer holding unclaimed funds for the benefit of the individual and therefore any unclaimed funds would escheat to the general unclaimed funds.  Due to this, it will increase the cost of administration by $2,500.00.  However, class counsel agreed that there could be an issue with individuals moving; and therefore, given that the increased cost of administration would not more than minimally decrease each individual's payment, the unclaimed funds should escheat to the State.  Defendants had no objection to having the funds escheat to the State.

Based on the discussion at the August 21, 2019 hearing, the Court finds that it is in the interest of the class to have any unclaimed funds escheat to the State to be held for the employee.  Although there is slight increase in the costs of administration, it will ensure that any employee who moves within the three year period and is unable to be located during the distribution process will have the opportunity to claim the funds.  Any unclaimed funds shall escheat to the State of California Controller's Office, Unclaimed Property Fund, in accordance with California's escheatment law.

/ / /

### C. Class Representative Enhancement Payments

The settlement agreement proposed and the class representatives sought an enhancement payment of $5,000.00 in the motion for preliminary approval. In granting preliminary approval, the Court found that the amount appeared to be excessive in relation to the efforts and time that the class members devoted to the action. (Order Granting Preliminary Approval of Class Action Settlement 21, ECF No. 31.) Plaintiffs were advised that they could submit additional evidence at final certification in support of a request for additional compensation. (Id.) Plaintiffs are now requesting an enhancement payment of $3,500.00.

In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefitted, the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff. Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975-77 (9th Cir. 2003).

For the reasons stated in the April 24, 2019 order granting preliminary approval, the Court finds that $3,500.00 is reasonable compensation for the services provided by the class representatives in this action given the risks that they took in representing the class and the time spent adjudicating this action. (ECF No. 31 at 20-21.) The Court shall award the named class representatives an enhancement award of $3,500.00 each.

### D. Attorney Fees

Class counsel are seeking attorney fees in the amount of twenty-five percent of the common fund or $131,250.00. In the Ninth Circuit, courts typically calculate twenty-five percent of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. In re Bluetooth, 654 F.3d at 942. The usual range for common fund attorney fees are between twenty to thirty percent. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

There is no dispute that the plaintiffs are entitled to reasonable attorney fees in this action as the prevailing party. However, "[i]n a class action, the district court 'must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.' " Parkinson v. Hyundai Motor America, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010) (quoting Zucker v. Occidental Petrol. Corp., 192 F.3d 1323, 1328–29 (9th Cir.1999)). The court should consider if the percentage is reasonable in light of the circumstances of the the the case. Vizcaino, 290 F.3d at 1048. The amount involved and the results obtained are relevant to the reasonableness of the fee award. Hensley v. Eckerhart, 461 U.S. 424, 430 (1983).

Counsel in this action has achieved exceptional results in this action. The class is receiving sixty six percent of the primary damages with a gross settlement fund of $525,000.00. Each class member will be receiving recovery based upon the number of pay periods worked with an average recovery of approximately $1,913.00. Further, after this action was filed, Defendants changed their practices and workers are now receiving meal and rest periods. (Martinez Decl. at ¶ 15.)

Counsel took this action on a contingency basis and recovery was far from certain. Counsel states that when he took this action it was risky because there was a question as to whether the FLSA overtime exception applied to some or all of the groups of employees and there was a risk that the class would not be certified as to one or more of the state law claims. (Martinez Decl. at ¶ 34.) The risk of nonpayment supports the award of attorney fees.

The amount of attorney fees requested is at the benchmark established in the Ninth Circuit. Counsel litigated this action for a year and a half prior to the settlement. The class members received notice of the fee request, and no class member objected to the amount requested or the request for reimbursement of costs. Therefore, the fee request appears to have the support of the class. The Court next considers if the fee request itself is reasonable.

1.    Percentage of Common Fund Award

Federal Rule 23(h) provides that "[i]n a certified class action, the court may award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Ninth Circuit has affirmed the use of two separate methods of calculating attorney fees, depending upon the case. Hanlon, 150 F.3d at 1029. "In 'common-fund' cases where the

settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or 'lodestar method.' " Id.

The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature, and therefore, monetary benefit is not easily calculated. In re Bluetooth, 654 F.3d at 941. The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

Since the benefit to the class is easily calculated in a common find case, courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness of the fee request. In re Bluetooth, 654 F.3d at 942. When applying the percentage of the common fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee request. See Vizcaino, 290 F.3d at 1050. "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (quoting In re Bluetooth, 654 F.3d at 942).

The settlement in this action has resulted in a common fund of $525,000.00. Class counsel is seeking $131,250.00 in attorney fees which is 25% of the gross settlement amount. (Amended Stipulation and Agreement to Settle Class and Collective Action ¶ 38.1.) Additionally, counsel seeks $11,694.00 in costs. (Martinez Decl. at ¶ 35.) Plaintiffs argue that class counsel is experienced and skilled and invested substantial amounts of time and energy on behalf of the class to achieve the settlement in this action.

The Court will employ the lodestar method as a cross check on the percentage method to ensure a failure and reasonable result. Alberto v. GMRI, Inc., 252 F.R.D. 652, 668 (E.D. Cal. 2008).

///

### a. Hourly Rate

Class counsel Enrique Martinez states that his hourly rate is $575.00 and he has been awarded this rate in the Eastern District. (Martinez Decl. ¶ 26.) Contract attorney Jocelyn Sperling's hourly rate is $500.00. (Decl. of Jocelyn Sperling in Support of Motion for Final Approval of Class Action Settlement ("Sperling Decl.") ¶ 11.) Plaintiffs are seeking an hourly rate of $400.00 for Mr. Martinez and Ms. Sperling for the purposes of the lodestar check in this matter. (Martinez Decl. ¶ 26; Motion for Final Approval of Class Settlement at 25.)

Mr. Martinez was admitted to practice in 2000 and has 19 years of experience with extensive experience in employment law, specializing in wage and hour actions. (Martinez Decl. ¶¶ 25, 26.) He has litigated over 40 wage and hour class actions leading to favorable results for the class. (Id. at ¶ 25) Mr. Martinez primarily represents low-wage and immigrant workers. (Id.) He has served on the boards of non-profit organizations and was president of La Raza Centro Legal in San Francisco and was chair of the California Employment Lawyer's Association Immigrant Employment Rights Committee. (Id.) He is a frequent speaker on employment matters at the Mexican Consulates and at statewide and nationwide conferences for California Employment Lawyers Association and the National Employment Lawyers Association. (Id.)

Ms. Sperling was also admitted to practice in 2000 and has 19 years of experience. (Sperling Decl. ¶ 2.) She spent years working as a law clerk and staff attorney at the Ninth Circuit and was a research attorney for the Alameda County Superior Court. (Id. at ¶¶ 4, 5.) In private practice, Ms. Sperling has worked both as trial and appellate counsel litigating complex and class action cases. (Id. ¶¶ 6, 7.) She serves on the Alameda County Bar Association's Judicial Appointments Evaluation Committee and has done extensive pro bono work for the California Rural Legal Assistance Foundation and Centro Legal de la Raza and co-authors a chapter on appellate procedure. (Id. ¶¶ 9, 10.)

In this district, the reasonable hourly rates for attorneys with less than fifteen years of experience are between $250.00 to $350.00 per hour. White v. Rite of Passage Adolescent Treatment Centers and Schools, No. 1:13-cv-01871-LJO-BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014). Attorneys with experience of twenty or more years of experience are awarded

$350.00 to $400.00 per hour. See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016); see also Garcia v. FCA US LLC, No. 1:16-CV-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with approximately thirty years of experience); Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc., No. 1:18-CV-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorneys with over twenty years of experience $325.00 and $300.00 per hour); TBK Bank, SSB v. Singh, No. 1:17-CV-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No. 1:17-CV-00868-LJO-BAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience $350.00 per hour; and attorney with ten years of experience $300.00 per hour). The Court shall adopt the rate of $400.00 per hour for the services of Mr. Martinez and Ms. Sperling for the purposes of the lodestar check.

Although the paralegals normal rate is $125.00 per hour, Plaintiff seeks $100.00 per hour for the four paralegals who worked on this case. (Martinez Decl. ¶ 32; Motion for Final Approval of Class Settlement, ECF No. 32-2.) Generally, within the Fresno Division, paralegal rates range between $75 to approximately $150.00 per hour depending on experience. Schmidt v. City of Modesto, No. 1:17-CV-01411-DAD-MJS, 2018 WL 6593362, at *6 (E.D. Cal. Dec. 14, 2018); Tarango v. City of Bakersfield, No. 1:16-cv-0099-JLT, 2017 WL 5564917, at *8 (E.D. Cal. Nov. 20, 2017). The Court shall adopt $100.00 per hour as a reasonable hourly rate for the paralegals for the lodestar cross-check purposes.

**b.     Hours Expended**

The declarations submitted and time records are sufficient to establish the number of hours worked in this matter. Mr. Martinez spent more than 164.7 hours on this case as detailed in the time entries provided in support of the motion. (Martinez Decl. ¶ 27; Time Accounting Records, ECF No. 32-2 at 50-58.) This time was spent communicating with class members and team members, researching, drafting pleadings, and reviewing discovery. (Martinez Decl. ¶ 27) Counsel anticipates that he will spend an additional twenty hours preparing for and attending the final approval hearing and in the distribution process. (Martinez Decl. ¶ 31.) Although this action

was not filed until February 16, 2018, Mr. Martinez began working on this action in April 2017. (Id. at ¶ 27.) A significant amount of time was spent contacting and meeting with potential class members. (Id. ¶ 27.) Mr. Martinez states that this was essential to develop trust among the class members especially those who continued to work for the defendants. (Id. ¶ 28.) Therefore, Mr. Martinez' hours reasonably expended 184.7 hours in this action.

Ms. Sperling has spent 16 hours on this action, without considering the 2 hours she spent on fees. (Sperling Decl. ¶¶ 12, 13.) Ms. Sperling reviewed the findings and recommendations and revised documents and drafted the supplemental briefing and the motion for final approval and the supporting papers. (Id. at 12.) Ms. Sperling reasonably expended 16 hours in this litigation.

Paralegal Jannet Torres expended 265.7 hours in this action. (Jannet Torres Time Sheet, ECF No. 32-2 at 60-65.) Paralegal Adrian Bueno expended 26.9 hours in this action. (Adrian Bueno Time Sheet, ECF No. 32-2 at 66.) Paralegal Lorena Soto Castro expended 19.90 hours in this action. (Lorena Soto Castro Timesheet, ECF No. 32-2 at 68.) Paralegal Kenia Y. Carmona expended 2.7 hours in this action. (Kenia Y. Carmona timesheet, ECF No. 32-2 at 69.) The paralegals have spent expended 315.2 hours. The paralegals are anticipated to spend an additional 50 hours in communicating with the class members during the distribution process. (Martinez Decl. ¶ 33.) Hours which are duplicative have been deleted from the request. Therefore, the total paralegal hours for the purposes of the lodestar check are 365.2.

Having reviewed the time records, the Court finds that the hours requested were reasonably expended on this action.

c. **Reasonable Fees for Purpose of Lodestar Check**

Based on the foregoing, for the purposes of the lodestar check, attorney fees in this action would be $80,280.00.[6] Reasonable fees for the services of the paralegals would be $36,520.00.[7] This is a total of $116,800.00.

To account for the risk that class counsel assumes when they take a class action on a

---

[6] 200.7 hours at $400.00 per hour.

[7] 365.2 hours at $100.00 per hour.

contingency basis, courts divide the total fees sought by the lodestar to arrive at a multiplier. Bellinghausen, 306 F.R.D. at 265. "If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable." Id. "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." Id. (citations omitted).

Here, based on the lodestar amount of $116,800.00, if the Court grants the request for a 25 percent fee award, the multiplier would be approximately 1.124. In light of the results obtained in the settlement of this action, the contingent nature of the fee agreement, and the skill required to properly litigate and settle this matter, the Court finds that the multiplier of 1.124 would be reasonable. See In re Immune Response Sec. Litig., 497 F.Supp.2d 1166, 1176 (S.D. Cal. 2007) (finding multiplier of 1.47 reasonable in class action settlement).

The Court finds that the attorney fees requested are reasonable and awards class counsel $131,250.00 in attorney fees.

2.    Costs

Plaintiffs also seek reimbursement for costs of $11,694 expended in this action. (Martinez Decl. ¶ 35; Litigation Expenses, ECF No. 32-2 at 71-176.) "[A]n award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." In re Immune Response Sec. Litig., 497 F.Supp.2d at 1177. Reasonable expenses may be awarded for travel, postage, telephone, fax, notice, online legal research fees, mediation fees, filing fees and photocopies. Id.

Upon review of the expenses submitted, the Court finds them to be reasonable. The Court awards costs in the amount of $11,694.00.

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    For purposes of this order, the Court adopts the terms defined in the settlement agreement.

2.    The Court finds that the Rule 23(a) prerequisites and Rule 23(b)(3) requirements are met for the settlement class. It further finds that the requirements are met for certification of

25

the FLSA class under the FLSA, 29 U.S.C. § 216(b).

3. The Court finds that the class notice was the best notice practicable as required by Rule 23(c)(2)(B) and due process. It also finds that the FLSA notice provided accurate and timely notice concerning the FLSA action, such that the employees could make informed decisions about whether to participate. The class notice and FLSA notice were mailed to all members of the Settlement Class, using their last known addresses.

4. The Court finds that the terms of the Settlement Agreement are fair, reasonable, and adequate under Rule 23(e). The Court also finds that the terms are a fair and reasonable resolution of a bona fide dispute under the FLSA.

5. The settlement agreement is finally approved and all provisions shall be effectuated. The named plaintiffs, the settlement class, and FLSA class members are barred from any future legal proceedings against Defendants concerning any of the released claims. However, any person who timely opted out of the class will not be bound by the settlement of the California claims, will not release his or her California claims, and will not be barred from future legal proceedings on the California claims. Any person who did not submit a consent to join/opt in to the FLSA action will not be bound by the settlement of the FLSA overtime claim, will not release the FLSA claim, and will not be barred from future legal proceedings on the FLSA claim.

6. Upon completion of administration of the settlement agreement, the claims administrator shall provide written certification of such completion to the Court and counsel for the parties.

7. Class representatives Victor Rodriguez, Estreberto Valdez, Miguel Esparza, and Francisco Banda are each awarded an incentive award of $3,500.00, to be paid from the gross settlement fund.

8. Class counsel is awarded attorney fees in the amount of $131,250.00 and costs of $11,694.00, to be paid from the gross settlement fund.

9. The Court finds that an allocation of $10,000.00 of the gross settlement fund to the PAGA claims is reasonable. The claims administrators shall pay $7,500.00 (75 percent of the allocation) to the California Labor and Workforce Development Agency.

10.    The claims administrator shall be paid $22,500.00 from the gross settlement fund for the cost of notice and claims administration.[8]

11.    The Court finds that the individual settlement payments to be paid to the class members and members of the collective action as set forth in the Settlement Agreement are fair and reasonable.  The Court finally approves and orders the payment of those amounts be made from the net settlement proceeds in accordance with the terms of the Settlement Agreement.

12.    The claims administrator shall send any unclaimed funds to the State of California Controller's Office, Unclaimed Property Fund, in accordance with California law be held in the name of and for the benefit of class members under California's escheatment laws.

13.    The Court hereby enters judgment in favor of Plaintiffs and against Defendants, and approves the terms of the settlement agreement.  The action is dismissed with prejudice. Each side shall bear its own costs and attorney fees, except as provided by the settlement agreement and set forth herein.

14.    The Court shall retain jurisdiction to enforce the Settlement Agreement and Judgment.

15.    The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:    **August 21, 2019**

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court approves the amount based on counsel's representation of the increased costs due to the unclaimed funds escheating to the State.

27